*Attorney Grievance Commission v. Steven Anthony Lang & Olayemi Isaac Falusi*, Misc. Docket AG No. 86, September Term, 2016

**ATTORNEY MISCONDUCT — DISCIPLINE — INDEFINITE SUSPENSION —** Respondent Steven Anthony Lang violated Maryland Lawyers' Rules of Professional Conduct 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16, 5.5, 7.1, 7.5, 8.1, and 8.4, and Maryland Rules 16-603, 16-604, and 16-601.1. These violations arose from Mr. Lang's conduct in representing a client in a foreclosure proceeding; assisting and enabling an unadmitted attorney to practice law in Maryland; failing to maintain an attorney trust account; and making material misrepresentations to Bar Counsel. An indefinite suspension is the appropriate sanction for Mr. Lang's misconduct.

**ATTORNEY MISCONDUCT — DISCIPLINE — INDEFINITE SUSPENSION —** Respondent Olayemi Isaac Falusi violated Maryland Lawyers' Rules of Professional Conduct 1.1, 1.2, 1.3, 1.4, 1.5, 1.16, 5.5, 7.1, 7.5, 8.1, and 8.4, and Maryland Code Annotated, Business Occupations & Professions § 10-601. These violations arose from Mr. Falusi's conduct in engaging in the unauthorized practice of law in Maryland by representing three clients in Maryland matters; failing to disclose the existence of his law practice on his application for admission to the Maryland Bar; and making material misrepresentations to Bar Counsel concerning his practice. An indefinite suspension is the appropriate sanction for Mr. Falusi's conduct.

Circuit Court for Prince George's County
Case No. CAE17-07945
Argued: April 9, 2018

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 86

September Term, 2016

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

STEVEN ANTHONY LANG &
OLAYEMI ISAAC FALUSI

_____

Barbera, C.J.,
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Barbera, C.J.
Watts, J., concurs and dissents

_____

Filed: August 16, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

On January 30, 2017, Petitioner, the Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed in this Court a Petition for Disciplinary or Remedial Action ("Petition") against Respondents Steven Anthony Lang and Olayemi Isaac Falusi. From November 2012 to February 2014, Mr. Lang and Mr. Falusi were partners in Lang & Falusi, LLP.

As for Mr. Lang, the Petition alleged violations of the Maryland Lawyers' Rules of Professional Conduct[1] ("MLRPC") 1.1 (Competence), 1.2 (Scope of Representation), 1.3 (Diligence), 1.4(a) and (b) (Communication), 1.5(a) (Fees), 1.15(a) and (c) (Safekeeping Property), 1.16(d) (Declining or Terminating Representation), 3.3 (Candor Toward the Tribunal), 5.5(a) (Unauthorized Practice of Law; Multijurisdictional Practice of Law), 7.1(a) (Communications Concerning a Lawyer's Services), 7.5(a) (Firm Names and Letterheads), 8.1(a) and (b) (Bar Admission and Disciplinary Matters), and 8.4(a), (c), and (d) (Misconduct). The Petition also alleged that Mr. Lang violated Maryland Rules 16-603 (Duty to maintain account), 16-604 (Trust account — Required deposits), and 16-606.1 (Attorney trust account record-keeping).[2]

The Petition alleged that Mr. Falusi violated MLRPC 1.1, 1.2, 1.3, 1.4(a) and (b),

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the Maryland Attorneys' Rules of Professional Conduct and recodified, without substantive change, in Title 19 of the Maryland Rules. Because we judge Respondents' conduct against the law at the time of their actions, we refer to the MLRPC throughout.

[2] Effective July 1, 2016, Title 16, Chapter 600 of the Maryland Rules were recodified, without substantive change, to Title 19, Chapter 400. For the reasons stated above, we will refer to Maryland Rules 16-600 *et seq.* throughout.

1.5(a), 1.15(a) and (c), 1.16(d), 3.3, 5.5(a) and (b), 7.1(a), 7.5(a), 8.1(a) and (b), and 8.4(a), (b), (c), and (d).  As with Mr. Lang, the Petition also alleged violations of Maryland Rules 16-603, 16-604, and 16-606.1.  Finally, the Petition alleged that Mr. Falusi violated Maryland Code Annotated, Business Occupations & Professions ("BOP") § 10-601 (Bar admission required to practice law in the State).

These violations stemmed from Respondents' conduct as partners of Lang & Falusi, LLP; their representation of multiple clients; Mr. Falusi's application to the Bar of Maryland; and Bar Counsel's investigation of Respondents.

This Court transmitted the matter to the Circuit Court for Prince George's County and designated the Honorable Robin D. Gill Bright ("the hearing judge") to conduct an evidentiary hearing and make findings of fact and conclusions of law.  Respondents filed timely responses to the Petition, and an evidentiary hearing took place on November 6 and 8, 2017.  At the hearing, the judge heard testimony from Respondents and four witnesses, one of whom testified by way of a video deposition.

Upon considering the hearing judge's findings of fact and conclusions of law and independently reviewing the record, we adopt in large part the hearing judge's proposed findings of fact and conclusions of law.  Based on the rule violations we have determined the Respondents committed, as well as aggravating and mitigating factors we have identified, we indefinitely suspend both Respondents.

**I.**

**The Hearing Judge's Findings of Fact**

We summarize here the findings of fact made by the hearing judge, supported by

2

clear and convincing evidence.

*Background*

Mr. Lang was admitted to the Massachusetts Bar in 2010 and the Maryland Bar in 2012.  Mr. Falusi was admitted to the Massachusetts Bar in 2009 and, after applying in 2011, was admitted to the Maryland Bar in 2016.  In November 2012, Mr. Falusi registered a limited liability partnership named "Lang & Falusi, LLP" ("the Firm") with the Maryland State Department of Assessments & Taxation ("SDAT").  The partnership was created to provide professional legal services.  The Firm's principal office was listed as an address in Silver Spring, Maryland, but it operated out of an office in Lanham, Maryland.  The two initially arranged to share office space and expenses but to maintain their own separate practices, with Mr. Lang practicing criminal law and Mr. Falusi practicing immigration law.

From January 2013 to December 2013, Mr. Lang and Mr. Falusi occupied the Lanham office.  The Firm's letterhead listed the Lanham address, a website, and phone and fax numbers.  The letterhead also included a legend with two symbols—one was labeled "†† Barred in Maryland and Massachusetts" and the other "† Barred in Massachusetts"— but neither symbol appeared next to a name, and thus the symbols did not indicate to which attorney they applied.  Respondents also maintained a website for the Firm, which advertised the Firm's attorneys and listed the services they offered.  The website provided:

> Attorney Falusi represents clients in various areas of law, and due to his unique background, his case dockets are overwhelmingly on immigration law and criminal defense.  He has successfully handled countless family-based immigration visas, change of status, and adjustment of status.  He also handles political asylum, employment based visas, as domestic/VAWA

3

matters. Moreover, his experience as a criminal defense attorney and a former prosecutor has served many of his clients prudently. Mr. Falusi is a member of the Bar of the Commonwealth of Massachusetts, and the United States District Court, First Circuit.

A separate page on the Firm's website, "Areas of Practice," listed various areas in which the Firm's attorneys practiced, including "Product Liability/Warranties, Federal Criminal defense, Malpractice, Immigration, Bankruptcy, Criminal law, Business Law, Contract Law, [and] Family Law (Divorce, Custody, Asset Conservation, Support Modification)." The description, however, did not specify which attorney practiced in which areas. A layperson may have surmised that Mr. Falusi was a Maryland attorney who focused on immigration matters rather than an attorney whose practice was limited to immigration matters (as he was not yet admitted in Maryland).

On February 4, 2014, Mr. Falusi filed a Withdrawal of Limited Liability Registration with SDAT, dissolving the Firm.

*Lang & Falusi, LLP's PNC Bank Operating Account*

Neither of the Respondents ever established an attorney trust account for the Firm. Instead, they used a bank account at PNC Bank (the "Operating Account"), which was established and managed by Mr. Falusi. Bank statements from that account and two transaction summaries prepared by Bar Counsel were admitted into evidence. Relevant here, those records showed various deposits from the Operating Account for legal services, which included several checks with no reference in the memo line and other checks for "legal work," "legal fee," and "attorney fees." In addition, a $4,000.00 check made payable to Diane Holder and Lang & Falusi, LLP was deposited into the Operating Account for

4

Mr. Falusi's representation of Ms. Holder in a Massachusetts personal injury case. A check for $2,500.00 was disbursed from the Operating Account to Ms. Holder and referenced "case settlement" in the memo line. The hearing judge further found:

> On November 18, 2013, Respondent Falusi deposited check #6619823 for Eight Thousand and 00/100 Dollars ($8,000) from USAA Casualty Insurance Company, payable to Lang & Falusi, LLP and a third party, Olivia Lang. Respondent Lang handled a personal injury case for his daughter, Olivia [] Lang, and provided legal representation in connection with the settlement. Respondent Lang received check #147 for One Thousand and 00/100 Dollars ($1,000) for "legal work done" on November 19, 2013. On November 21, 2013, check #146 for Six Thousand and 00/100 Dollars ($6,000) was disbursed from the Operating Account to Olivia Lang.

*Representation of Abby Daramola*

In November 2010, Deeds Realty Services ("Deeds Realty") filed a complaint against Abby Daramola in the District Court of Maryland sitting in Baltimore City. Deeds Realty claimed that Ms. Daramola wrote a bad check, in the amount of $6,000.00, due to insufficient funds. On March 4, 2011, Deeds Realty won an affidavit judgment against Ms. Daramola for $6,035.00. When she failed to make a payment on the judgment, Deeds Realty asked the court to direct her to appear for an oral examination. The first oral examination was held in February 2012, but it was not completed and was rescheduled. Ms. Daramola failed to appear at the second oral examination, and the court issued an order to show cause. After Ms. Daramola did not appear at the hearing on the show cause order, the court issued a writ of body attachment.

At the evidentiary hearing in this disciplinary proceeding, Mr. Falusi testified that one day, after a service at a church to which they both belonged, Ms. Daramola asked him to call Deeds Realty's attorney, Saul Jablon, to negotiate a payment plan. Mr. Falusi called

5

Mr. Jablon and stated that he was representing Ms. Daramola. The two reached a settlement, and Ms. Daramola was to repay the amount in installments. On May 3, 2013, Mr. Jablon sent Mr. Falusi a letter with a copy of the judgment, which included post-judgment costs. Mr. Falusi drafted a settlement agreement for $7,565.64, which stated that Ms. Daramola would pay $1,000.00 upon executing the agreement and subsequent monthly installments of $500.00 towards the balance. The parties stipulated that Ms. Daramola would have a fifteen-day grace period on the monthly installments, and Deeds Realty would not make a report on Ms. Daramola's credit. After consulting with Mr. Falusi, Ms. Daramola signed the settlement agreement and gave it to Mr. Falusi. On or about May 10, 2013, Mr. Falusi sent a letter on the Firm's letterhead (which he signed "O. Isaac Falusi, Esq.") to Mr. Jablon requesting a signature on the settlement agreement. Enclosed was a check in the amount of $1,000.00. The check, made out to the "Law Office of Saul Jablon for the Abby Daramola Case," was issued from the Operating Account.

On May 13, 2013, Mr. Jablon asked the court to withdraw its finding of contempt and cancel the show cause hearing. Ms. Daramola subsequently defaulted on her payments. Mr. Jablon called Mr. Falusi to inform him of the default, and Mr. Falusi said he would contact Ms. Daramola and call him back. Mr. Falusi did not do so.

*Representation of Justina Ikpim*

In July 2009, Justina Ikpim made a loan to Williams Areloegbe. Thereafter, she contacted Mr. Falusi for legal advice as to whether she had a cognizable claim against Mr. Areleogbe. On March 15, 2013, a $135.00 check from Ms. Ikpim to Lang & Falusi, LLP was deposited into the Operating Account. On March 26, 2013, on behalf of Ms. Ikpim,

6

Mr. Falusi filed in the Circuit Court for Prince George's County a Civil – Non-Domestic Case Information Report bearing his signature. He also filed a complaint bearing Mr. Lang's signature. The names of Respondents appeared below the signature line in the complaint, as did the name of the Firm and its Lanham address. Court records identified Respondents as the attorneys of record, but Mr. Falusi never attempted to appear *pro hac vice*. On March 27, 2013, payment in the amount of $143.55 was disbursed from the Operating Account to the Circuit Court for Prince George's County.

*Representation of Dennis Bean*

On May 30, 2013, in the Circuit Court for Montgomery County, foreclosure action 377650V ("First Foreclosure Action") was initiated for a piece of property located on Brunswick Avenue in Silver Spring, Maryland ("Property"), and owned by Dennis Bean. Mr. Bean had defaulted on payments for a home equity line of credit, which was secured by a second mortgage on his home. In July 2013, Mr. Bean twice met with Respondents at their Lanham office to discuss Mr. Bean's foreclosure case. Among other things, Mr. Bean provided them with information concerning the trustee for the first of his three mortgages, Samuel I. White, P.C., a Virginia law firm. He also informed Respondents that his first mortgage was approximately $170,000.00.

On July 9, 2013, Mr. Bean retained Lang & Falusi, LLP by way of a Flat Fee Agreement ("Agreement"). The Agreement was drafted by Mr. Falusi and printed on Firm letterhead, and it provided that Mr. Bean would pay a flat fee of $3,500.00. The Agreement listed Mr. Bean as "Client" and "Lang & Falusi, LLP, the firm and its members and Associates, etc." as "Attorneys." The Agreement contained the following clause:

7

> If the fee stated above is based on fixed fee, and a retainer is advanced, and payments are made in installment by the Client by initialing heretofore Client consents that any advances and/or payments foretasted is the property of the Attorneys and can be held elsewhere other than a trust account, and used in furtherance of the representation, and upon early termination but without a conclusion of the object of the representation, any unearned fees will be returned after a full accounting by the Attorneys.

Mr. Bean initialed on the line following this notice and signed at the end of the Agreement, but neither Respondent clarified or explained the risks involved. Mr. Falusi signed on a line marked "Witness," which listed Respondents' names below. Mr. Lang did not sign the Agreement. Mr. Bean's check for $3,500.00, payable to Lang & Falusi, LLP, was deposited into the Operating Account on July 15, 2013.

Mr. Bean exchanged many emails with Respondents throughout the course of the representation. On July 9, 2013, Mr. Bean emailed Mr. Falusi[3] documents related to the Property and home equity line of credit. Mr. Falusi responded on July 12, 2013, and confirmed that he had received the email. On July 16, 2013, when he had not received an answer on his motion to postpone the First Foreclosure Action, Mr. Bean emailed Mr. Falusi[4] and asked how long it typically takes to receive a response. On July 17, 2013, Mr. Falusi replied that he would "check with the court tomorrow," but that between fifteen and thirty days was normal. The next day, on July 18, Mr. Falusi relayed to Mr. Bean that he had spoken with the clerk's office about the motion, which had not yet been ruled on.

---

[3] Mr. Bean sent the email only to Mr. Falusi's email address, but in the salutation, he wrote to "Issac [*sic*] and Steve."

[4] Again, the salutation was directed to "Isaac/Steve," but the email was sent only to Mr. Falusi.

Mr. Lang entered an appearance on July 23, 2013, in the First Foreclosure Action. As to the second mortgage, the plaintiffs/trustees were represented by Kristine D. Brown. On July 26, 2013, Mr. Lang filed a motion for a preliminary injunction. The motion alleged that the plaintiff's filing of the First Foreclosure Action was deficient in a number of respects. Based on those deficiencies, the motion stated, "Defendant seeks to file a lawsuit against the Trustee for breach of her fiduciary duty." The plaintiff opposed the motion. On July 25, 2013, the court dismissed the First Foreclosure Action without prejudice.[5]

On September 3, 2013, prompted by a letter he received showing that his first mortgage had been assigned to Green Tree Servicing, Mr. Bean emailed Respondents. Mr. Lang replied, detailing a strategy of filing a lawsuit to void the Deed of Trust.[6] Mr. Bean again emailed Respondents on September 20, 2013, to voice his concern about the case. Mr. Falusi reassured Mr. Bean that he would respond within the time period allowed, writing that "[t]he firm gives a 30 day period to respond and we shall do so before the 30 days is over." On September 24, 2013, Mr. Falusi sent a letter on Firm letterhead to Samuel I. White, P.C. regarding Mr. Bean's first mortgage. Mr. Falusi noted that the Firm had been retained to represent Mr. Bean in the matter, stated Mr. Bean's dispute of the

---

[5] The circuit court's order to dismiss the First Foreclosure Action was signed on July 25, but it was not filed by the clerk until July 29. The dismissal was based on the plaintiff's Rule 2-506 motion, which was filed on July 21, five days before Mr. Lang's motion.

[6] In his email, Mr. Bean was referring his first mortgage, which is why he mentioned that it had been reassigned. Mr. Lang, however, was likely referring to filing a lawsuit to fight a foreclosure as to Mr. Bean's second mortgage, given that Mr. Lang eventually sought to void the Deed of Trust for Mr. Bean's second mortgage but took no action with respect to his first mortgage.

9

$172,350.85 debt, and requested further information about the original creditor (which was to be sent to the Lanham address on the letterhead). Mr. Falusi signed the letter above a typed signature line reading "O. Isaac Falusi, Esquire"; he did not mention that he was not barred in Maryland or that only Mr. Lang was representing Mr. Bean.

On September 26, 2013, Mr. Bean emailed Respondents to ask about the course of the representation. Mr. Falusi replied, "We have sent out correspondence to them, . . . however we can proceed with what you forwarded to us. Yes we are pursuing all options available to us." Subsequently, on October 24, 2013, Mr. Lang informed Mr. Bean that he was "now ready to move forward with your case" and that he "will be working on it today." He also described "our plan to file a petition for a declaratory judgment voiding your deed of trust" and objecting to "any foreclosure action [that] has taken place."

On December 27, 2013, another foreclosure action, case number 385388V, relating to Mr. Bean's second mortgage, was docketed in the Circuit Court for Montgomery County ("Second Foreclosure Action"). On January 14, 2014, Mr. Lang filed a motion for a preliminary injunction, which was nearly identical to the one filed in the First Foreclosure Action. As in the First Foreclosure Action, the plaintiffs/trustees were represented by Kristine D. Brown.

On February 5, 2014, Mr. Bean emailed Mr. Falusi to ask him if he had been receiving his emails because nobody had responded. Mr. Bean stated: "If you are not going to help just let me know so I move forward [*sic*] and figure out my next step." Mr. Falusi replied on February 6, 2014, though from a different email address, and stated that he had received Mr. Bean's emails. Mr. Falusi explained:

10

> [W]e were working on merger and the merger is now in full force as you can tell from the name and address in the signature area. Steve is not on board on the merged entity but he and I are still working on your case and we will work on it until the final outcome. . . . We are gearing up for the next filing and keep the emails coming.

In addition to Mr. Falusi's name, "O. Isaac Falusi, Esquire," his signature block contained the name of a new law firm, "Thoronka, Taiwo, Thoronka & Falusi, PC," with an address in Silver Spring, Maryland.

The court denied Mr. Lang's motion for a preliminary injunction in the Second Foreclosure Action that same day, February 6, 2014, and set a hearing for February 27, 2014. Having learned that the court denied the motion, Mr. Bean sent another email to Mr. Falusi and asked about the plan going forward. He also expressed concern about the Respondents having separated and the Firm being dissolved. The next day, on February 7, 2014, Mr. Falusi replied, telling him that "we are still working together on your case and many other cases we have together." Mr. Falusi also explained that he and Mr. Lang were parting ways because of their different goals.

On February 18, 2014, Mr. Falusi told Mr. Bean that he was working on a complaint[7] and hoped to file it in District Court later that day. On February 24, 2014, in response to Mr. Bean's inquiry about whether the complaint had been filed, Mr. Falusi confirmed that it had. Also on February 24, 2014, three days before the hearing in the Second Foreclosure Action, Mr. Lang informed Mr. Bean that he would not be present, but that he would file a motion to postpone the case. The next day, Mr. Bean asked what would

---

[7] Mr. Falusi was apparently referring to the petition for declaratory judgment to void the Deed of Trust as to Mr. Bean's second mortgage.

11

happen if the court denied the motion and nobody appeared at the hearing. Mr. Falusi then provided Mr. Bean with the case number for the new case, but neither he nor Mr. Lang responded to Mr. Bean's question.

Mr. Lang filed a request for an extension two days before the hearing in the Second Foreclosure Action. Mr. Lang claimed, without any supporting documentation, that he would be unable to appear because he was in Chicago, Illinois working on a different case. Mr. Lang's motion did not state the opposing party's position on the request. On February 27, 2014, the court had not ruled on the motion, and the hearing proceeded without Mr. Lang. The court granted the trustee's motion for leave to proceed with the foreclosure. Mr. Bean contacted Mr. Falusi on March 5, 2014, stating that he looked up his case and saw what had happened at the hearing. Mr. Falusi answered the next day, remarking that the decision did "not bode well" for them, but he reassured Mr. Bean that if they "win the fight on the new matter—voiding the title, then it would void everything they are doing. We are also looking into filing a motion to vacate this recent judge's order."

Pursuant to that strategy, on February 19, 2014, Respondents had filed a new action for declaratory judgment against Kristine D. Brown in the Circuit Court for Montgomery County, case number 387359V, on Mr. Bean's behalf. The lawsuit sought to void the Deed of Trust related to the second mortgage. On April 25, 2014, while the declaratory judgment action was ongoing, Samuel I. White, P.C. filed in the Circuit Court for Montgomery County a new, separate action concerning Mr. Bean's first mortgage, case number 390048V.

On July 23, 2014, Mr. Bean requested from Mr. Lang copies of all documents and

12

filings in his case. On August 22, 2014, Mr. Bean emailed Mr. Falusi and noted his concern that nothing had been filed in his case and that a sale of the Property was scheduled for September 6, 2014. On August 29, 2014, Mr. Bean again emailed Mr. Falusi, but this time he expressed his frustration with Respondents' lack of communication and involvement in the case. Mr. Bean advised that if Respondents failed to assist him, he would be forced to obtain new counsel, and he again requested copies of his entire client file. Respondents did not provide Mr. Bean with a copy of his client file until on or about November 12, 2014.

On August 30, 2014, Mr. Lang emailed Mr. Bean. In the email, Mr. Lang stated that he neither participated in the case involving Mr. Bean's first mortgage nor appeared in the pending action concerning Mr. Bean's first mortgage. On September 8, 2014, Mr. Lang moved to withdraw as counsel in the Second Foreclosure Action. On September 11, 2014, the court notified Mr. Lang that he had not properly withdrawn under Maryland Rule 2-132(b). On September 29, 2014, Mr. Lang filed a Certification of Notice, which was dated August 26, 2014, and a Disengagement Letter, which was dated September 24, 2014. As to the Certification of Notice, Mr. Lang conceded that he wrote it after he received notice from the court. Mr. Bean was not sent a copy of the Certification of Notice; he discovered it in his client file later that year.

The defendant in the action for declaratory judgment filed a motion to dismiss on September 19, 2014. Mr. Lang did not file an opposition on Mr. Bean's behalf. On October 7, 2014, the court granted Mr. Lang's motion to withdraw as Mr. Bean's counsel. On November 6, 2014, Mr. Bean wrote a letter to the court. He stated that he had not received

a copy of the files in his case and that without them, it would be difficult to proceed. On November 10, 2014, the declaratory judgment action was dismissed with prejudice. On or about November 12, 2014, Respondents provided Mr. Bean with his client file. Mr. Bean did not receive an accounting of work the Firm had done, nor was he refunded any portion of the $3,500.00 flat fee.

*Deposits and Disbursements for Immigration Matters*

Mr. Falusi also handled several immigration matters that involved disbursements from and deposits into the Operating Account. Between May 2013 and October 2013, five deposits were made: two made no reference in the memo line, while the other three were for "legal fees," "services," and "immigration work." Three disbursements on behalf of four of Mr. Falusi's immigration clients, in the amounts of $1,490.00, $590.00, and $680.00, were made from the Operating Account to the U.S. Department of Homeland Security.

*Other Disbursements and Deposits*

Beginning in February 2013 and continuing until December 2013, checks for $550.00 each month, payable to the Annapolis Road Professional Building for rental space, were disbursed from the Operating Account. On September 10, 2013, a check from the Annapolis Road Professional Building for $1,250.00 was deposited into the Operating Account. In addition, on January 20, 2014, a $3,000.00 check was disbursed from the Operating Account, payable to Guardian Building Associates, for a security deposit and rent for an address in Silver Spring, Maryland.

Various other disbursements from the Operating Account were made between

14

January 2013 and February 2014. Disbursements were made, for example, to Victoria's Secret, Giant Food, Ticketmaster, Enterprise Rental Car, Nordstrom's, and Banana Republic. Unknown ATM withdrawals were also made from the Operating Account. Other debits from the Operating Account included payments to the Clerk of the Court for Prince George's County, Montgomery County Government, SDAT, FedEx, USPS, Sprint, and others.

As for deposits, on April 16, 2013, $8,000.00 in cash was deposited into the Operating Account, though other information concerning this deposit is unknown. On April 19, 2013, a cash withdrawal of $7,979.82 was made from the Operating Account, ostensibly for Mr. Falusi's child support payments in the District of Columbia. Several other deposits and disbursements were for attorney-related activity, including payments of settlement money to clients and debits for attorney-related matters. The Operating Account's activity also included charges of a personal nature.

*Bar Counsel's Investigation of Mr. Lang*

Bar Counsel opened an investigation into Mr. Lang based on his handling of client matters. Bar Counsel sent a letter to Mr. Lang on December 15, 2014, requesting a response to a complaint filed by Mr. Bean. Mr. Lang did not respond. Bar Counsel sent another letter on January 26, 2015. Mr. Lang replied on February 13, 2015, that he assisted Mr. Bean with his defense in a foreclosure action. Mr. Lang also stated that the declaratory judgment action was not part of the representation agreement, but that he "did it for free" to assist Mr. Bean.

In response, on April 22, 2015, Bar Counsel requested a complete copy of Mr.

Bean's client file, including "trust account records to demonstrate the legal fees paid by Mr. Bean were maintained in trust from the date they were received until they were fully earned." Mr. Lang asserted that he did not have Mr. Bean's client file, he had never handled any money, and Mr. Bean never gave him any money. Bar Counsel also inquired as to why Mr. Lang had failed to maintain an attorney trust account. On July 29, 2015, Mr. Lang answered that he received a waiver from the IOLTA program and, thus, former Maryland Rule 16-606.1(d) did not apply to him. Mr. Lang further claimed that the Firm's monthly balance in the Operating Account was roughly $2,500.00, and that client funds were not enough to generate interest.

Subsequently, on September 5, 2015, Mr. Lang sent a letter to Bar Counsel with a further explanation of what had happened with Mr. Bean's money. Mr. Lang stated that Mr. Bean gave a check to his "assistant," which was paid through his office, and that he did not personally receive the money. He also advised that the Operating Account was located at PNC Bank, but he could not access the account, did not know the account number, and could not produce any bank records.

*Bar Counsel's Investigation of Mr. Falusi*

Mr. Falusi was admitted to the Massachusetts Bar in 2009. On May 18, 2011, Mr. Falusi submitted an Application for Admission to the Bar of Maryland to the State Board of Law Examiners ("Board"). In July 2011, he sat for the Maryland Bar Examination, which he passed. His admission to the Maryland Bar was delayed, however, because the member with whom he initially interviewed recommended to the Character Committee that a hearing be held. On February 27, 2012, the Co-Chair of the Character Committee for the

16

Fourth Appellate Circuit, William C. Brennan, Jr., Esq., wrote to Mr. Falusi, informing him that the Committee intended to conduct a hearing pursuant to Rule 5 of the Rules Governing Admission to the Bar. The Committee, Mr. Brennan wrote, would be assessing whether Mr. Falusi possessed the requisite moral character to practice law. The hearing was held on May 24, 2012. At the hearing, Mr. Falusi, who was not represented by counsel, was confronted with the issues with which the Committee was concerned, which included Mr. Falusi's 1997 criminal conviction in the District Court of Maryland for Baltimore City for uttering a false document and various credit and financial issues. The three-member panel of the Committee, chaired by Mr. Brennan, gave Mr. Falusi more time to resolve those issues.

Thereafter, Mr. Falusi retained John O. Iweanoge, II, Esq., to represent him in the matter of his application for admission to the Maryland Bar. On December 6, 2012, Mr. Iweanoge sent a letter to Mr. Brennan informing him of the representation. Then, on April 30, 2013, Mr. Iweanoge sent the Character Committee eight exhibits to supplement Mr. Falusi's application to the Bar. The eighth and final exhibit was a copy of Mr. Falusi's resume. The resume listed Mr. Falusi's most recent legal employment as a Contract Attorney for "Buckley Sanders, LLP" from "February 2011" to "Present." He described his work there as "[e]lectronic discovery and review of loan documents for purpose of regulatory compliance." Mr. Falusi failed to list on his resume his partnership at Lang & Falusi, LLP, which, at the time he submitted the resume, was an active law practice with an office in Lanham, Maryland.

In February 2015, after the Firm was dissolved, Mr. Falusi sent additional financial

documentation to the Character Committee. Mr. Falusi was unassisted by counsel at that time. On June 9, 2015, the three-member panel of the Character Committee found, in a written report and by a 2-1 vote, "that the Applicant has met his burden to demonstrate that he presently possesses the requisite moral character for admission to the Maryland Bar." The Committee noted that Mr. Falusi "seems to have been careless in disclosing his background information to the MA and MD bars but not to the point where the Committee feels he was intentionally hiding information." The dissenting panel member, though, found "several instances" in which Mr. Falusi made false statements of material fact.

On January 27, 2016, the Board contacted Mr. Falusi to inform him of a hearing on April 8, 2016, during which the Board would consider whether Mr. Falusi possessed the requisite character and fitness for admission to the Bar. After the hearing, the Board notified the Clerk of the Court of Appeals that it unanimously agreed with the majority of the Character Committee. The Board therefore recommended that Mr. Falusi be admitted to the Maryland Bar. Mr. Falusi appeared before the Court of Appeals on June 1, 2016, where he took the oath of admission to the Bar.

By letter dated May 16, 2016, roughly two weeks before Mr. Falusi was sworn in, Bar Counsel notified Mr. Falusi of Mr. Bean's complaint and other issues and requested that he respond. Mr. Falusi did not notify the Board or the Court of Appeals before he took the oath of admission that he had been contacted by Bar Counsel. On June 16, 2016, Mr. Falusi replied to Bar Counsel. He stated that he "did not have any relationship with Mr. Bean," and that when Mr. Bean came to their office, Mr. Falusi advised him that he was not licensed to practice law in Maryland. Mr. Falusi also relayed to Bar Counsel that he

communicated with Mr. Bean to assist Mr. Lang. Mr. Falusi further stated that he only practiced immigration law at the Firm, but he "perform[ed] paralegal work if/when needed."

## II.

## The Hearing Judge's Conclusions of Law

The hearing judge determined that both Respondents violated MLRPC 1.1, 1.2(a), 1.3, 1.4(a) and (b), 1.5(a), 1.15(a), 1.16(d), 5.5(a), 7.1(a), 8.1, and 8.4; former Maryland Rules 16-603, 16-604, and 16-606.1; and BOP § 10-601. The hearing judge also concluded that Mr. Falusi violated MLRPC 5.5(b). Mr. Falusi excepts to each of the hearing judge's conclusions of law. Bar Counsel excepts to the hearing judge's general conclusions as to MLRPC 8.1 and 8.4, asking us to find specific violations of each Rule. We shall address each conclusion and, in the course of doing so, will address the pertinent exceptions.

The hearing judge found the following aggravating factors as to Respondents Lang and Falusi: "pattern of misconduct; multiple violations; and refusal to acknowledge the misconduct's wrongful nature." The hearing judge did not find that Respondents established any mitigating factors by a preponderance of the evidence. Bar Counsel alleges the existence of additional aggravating factors. Mr. Lang and Mr. Falusi both advocate for mitigating factors and argue that the hearing judge improperly found aggravating factors.

## III.

## Standard of Review

"In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v.*

*McLaughlin*, 456 Md. 172, 190 (2017) (citation omitted). We accept the hearing judge's findings of fact unless those findings are clearly erroneous, and we "give[] deference to the hearing judge's assessment of the credibility of the witnesses." *Attorney Grievance Comm'n v. Butler*, 441 Md. 352, 359 (2015). "A hearing judge's factual finding is not clearly erroneous if there is any competent material evidence to support it." *Attorney Grievance Comm'n v. McDonald*, 437 Md. 1, 16 (2014) (citation omitted). Pursuant to Maryland Rule 19-741(b)(1), we review the hearing judge's conclusions of law without deference. *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 178 (2015).

All three parties elected to file, under Rule 19-728(b), exceptions to the hearing judge's findings of fact and conclusions of law and recommendations for sanction. We determine whether the hearing judge's findings met the standards in Rule 19-727(c). And, under Rule 19-741(b)(2)(B), our review is limited to the findings of fact challenged by the exceptions. If no exceptions are filed as to a particular fact, we may treat it as established. Md. Rule 19-741(b)(2)(A). We also note that a hearing judge, in assessing the credibility of witnesses and making findings of fact, is free to "pick and choose which evidence to rely upon." *Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 181 (2014) (citations omitted). In that same vein, a hearing judge need not "mention every evidentiary matter" in its findings of fact. *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 384 (2001).

An attorney must show the presence of mitigating circumstances by a preponderance of the evidence. *Attorney Grievance Comm'n v. Joseph*, 422 Md. 670, 695 (2011) (citations omitted). The existence of aggravating factors must be demonstrated by

clear and convincing evidence. Md. Rule 19-727(c) ("Bar Counsel has the burden of proving the averments of the petition by clear and convincing evidence."); *Attorney Grievance Comm'n v. Eckel*, 443 Md. 75, 85 n.5 (2015) (noting that aggravating factors must be proven by clear and convincing evidence and not, as the hearing judge indicated, by a preponderance of the evidence).

## IV.

## Discussion

**Mr. Falusi's Factual Exceptions**

*Exceptions Regarding the Factual Background*

Mr. Falusi filed a number of exceptions to the hearing judge's findings of fact. He first takes issue with the hearing judge's assessment of the Firm's letterhead, arguing that the hearing judge simply failed to understand the meaning of the symbols next to Respondents' names. This contention is unfounded. Mr. Falusi's explanation—though he concedes it was "not clearly marked"—is that Mr. Lang's name, which was listed first on the letterhead, corresponded to the top designation ("†† Barred in Maryland and Massachusetts"), and Mr. Falusi's name, which was listed second, corresponded to the bottom designation ("† Barred in Massachusetts"). At best, this explanation renders the symbols ambiguous, which comports with what the hearing judge found. At worst, it is counter-intuitive, given that a designation with two symbols could reasonably refer to the second-listed name rather than the first. Clear and convincing evidence was shown in that regard. We overrule Mr. Falusi's exception regarding the ambiguity of the letterhead.

Mr. Falusi also argues that the hearing judge "incorrectly made an inference

inconsistent with the facts" concerning the Firm's website. He contends that the hearing judge considered, but then ignored, the sentence in Mr. Falusi's description on the website that he was barred only in Massachusetts. As a result, Mr. Falusi argues that the hearing judge "unreasonably inferred" that "[a] layperson may surmise that Respondent Falusi is a Maryland attorney who concentrates on immigration as opposed to an attorney whose practice is limited to immigration matters." Mr. Falusi is correct that nothing on the website, save for the mention of Mr. Lang's Maryland Bar membership, referred to Maryland or Mr. Falusi's practice there. The Firm's Maryland address did not appear on the website, nor did the website directly state that Mr. Falusi practiced law in Maryland.

Clear and convincing evidence supports the hearing judge's findings with respect to the website. The Firm was established in and operated within Maryland; a lay person could have easily searched the Firm's name and found that it was located in Maryland; and the website failed to disclaim that Mr. Falusi *did not* practice law in Maryland. Given that Mr. Falusi's description stated that he practiced law in areas other than immigration—namely, criminal defense and domestic violence—a lay person may have inferred that he could, and did, practice law in Maryland in areas other than immigration. Accordingly, Mr. Falusi's exception is overruled.

*Exceptions Regarding the PNC Bank Operating Account*

Mr. Falusi takes exception to the hearing judge's finding that client and third-party funds were deposited directly into the Firm's Operating Account. He claims that no details were provided about deposits and disbursements other than those in the official bank statements. He argues that "[t]he mere fact that a client made payment or that certain fees

were paid on behalf of a client from the operating account does not suggest that the funds used for the payment was [*sic*] client or third-party funds." The hearing judge found that the transaction summary, client summary, and monthly statements submitted into evidence by Bar Counsel clearly and convincingly showed that client funds and third-party funds were deposited, disbursed, and commingled in the Operating Account. Notes in the transaction and client summaries, which were prepared by Bar Counsel's investigator, match the transactions found in the monthly statements and provided the basis for that finding. Mr. Falusi's exception is overruled.[8]

*Exceptions Regarding Abby Daramola*

Mr. Falusi excepts to the hearing judge's finding that "[o]n Respondent Falusi's advice, Ms. Daramola signed the settlement agreement and gave the agreement to Respondent Falusi." Mr. Falusi argues that Ms. Daramola's testimony before the hearing judge confirms that she needed him merely to communicate with Mr. Jablon rather than represent her interests. We give due regard, however, to the hearing judge's evaluation of Ms. Daramola's testimony, and we review the record for competent material evidence that Mr. Falusi in fact represented Ms. Daramola. We need look no further than Mr. Falusi's deposition testimony:

> I did draft the agreement after speaking with - - after speaking with Mr. Jablon. And, you know, I related the outcome with our discussion with Mr. Jablon, related that to Ms. - - Ms. Daramola like look, you need to make this payment or else it just, you know, you have no choice.

---

[8] Mr. Falusi also insists that he could not have opened a Maryland IOLTA account because he was not licensed in Maryland when he worked at the Firm. While it is correct that Mr. Falusi himself could not have opened an IOLTA account, Mr. Lang or Lang & Falusi, LLP as an entity could have (and should have) opened such an account.

23

You can't get out of it. You got to - - you know, trying to get - - you just have to make the first payment. And your first payment is $1,000. And she made that.

When Mr. Falusi sent a letter to Mr. Jablon on Firm letterhead, his signature read "O. Isaac Falusi, Esq.," and Mr. Jablon addressed correspondence to him as "Isaac Falusi, Esq." Even considering Mr. Falusi's strained definition of "advice," we overrule his exception.

*Exceptions Regarding Justina Ikpim*

Mr. Falusi asserts that the hearing judge failed to account for "pertinent and material facts" regarding Ms. Ikpim. Specifically, he claims that Ms. Ikpim, with whom Mr. Falusi had a "familial relationship" (apparently Ms. Ikpim was his father's girlfriend), came to him for a personal favor rather than to obtain legal advice and representation. The hearing judge considered Mr. Falusi's testimony on the subject and decided that it did not bear on whether Mr. Falusi provided legal representation to Ms. Ikpim. We find nothing in the record to compel a contrary conclusion, so we overrule Mr. Falusi's factual exceptions.

*Exceptions Regarding Dennis Bean*

Mr. Falusi first excepts to the hearing judge's finding that he drafted the Flat Fee Agreement that he and Mr. Bean signed. According to Mr. Falusi, the Agreement was the Firm's standard retainer agreement. At his deposition, Mr. Falusi testified that he drafted the Agreement. Mr. Lang also testified that Mr. Falusi drafted the Agreement. The exception is overruled.

Next, Mr. Falusi disputes that the hearing judge correctly identified the "Attorneys" in the Agreement as "Lang & Falusi, LLP, the firm and its members and Associates, etc." The record contains clear and convincing evidence contradicting Mr. Falusi's position.

24

Prior to signing the Agreement, Mr. Bean contacted Mr. Falusi to discuss the case. The Agreement clearly states that the "Attorneys" are "Lang & Falusi, LLP, the firm and its members and Associates, etc.," and Mr. Falusi confirmed this fact during his deposition. Mr. Falusi also confirmed that the Agreement was made among him, Mr. Bean, and Mr. Lang; that Mr. Bean retained the members of the Firm; and that he was a member of the Firm.

Pointing to Mr. Bean's testimony, however, Mr. Falusi argues that Mr. Bean knew that he was being represented only by Mr. Lang. Mr. Bean acknowledged in his testimony that Mr. Lang was the lead attorney handling his case, but he never stated that Mr. Lang was his only attorney. In fact, Mr. Bean testified that prior to signing the Agreement, he discussed case strategy with both Respondents. When asked what he believed Mr. Lang and Mr. Falusi would be doing for the $3,500.00, Mr. Bean stated that they would be defending the foreclosures they had discussed at the meeting. When asked what he understood to be Mr. Falusi's role in the representation, Mr. Bean answered, "During our meeting he told me Mr. Lang would be the lead but that, you know, he would be involved in the case." Then, when asked whether he understood Mr. Falusi to be his attorney, Mr. Bean responded that he believed Mr. Falusi was one of his attorneys and that he was a client of both Mr. Lang and Mr. Falusi. Mr. Falusi exchanged numerous emails with Mr. Bean concerning case strategy and progress. Mr. Falusi was also the only attorney to sign the Agreement; Mr. Lang did not sign it. Mr. Falusi's exception is overruled because clear and convincing evidence supports the hearing judge's findings as to these facts.

Mr. Falusi also excepts to the hearing judge's finding that neither Mr. Lang nor Mr.

25

Falusi explained to Mr. Bean the risks associated with the flat fee clause in the Agreement. Mr. Bean testified that Respondents "just said what they'd do for the fee is represent me, but not what they would do with the fee." Even though Mr. Bean initialed under the flat fee clause, Mr. Falusi could not affirmatively state whether he informed Mr. Bean of the risks, and Mr. Lang testified that there were no risks to disclose. Mr. Falusi's exception is overruled.

### Mr. Lang's Factual Exceptions

Mr. Lang excepts to alleged "adverse inferences" that the hearing judge drew from Bar Counsel when finding violations of the MLRPC, though he does not identify which violations resulted from these inferences. While we at times permit a hearing judge to draw adverse inferences, *Attorney Grievance Comm'n v. Nwadike*, 416 Md. 180, 197–98 (2010), we find that—save for the exceptions of Mr. Falusi that we sustain—the hearing judge's findings of fact and conclusions of law were supported by clear and convincing evidence. We therefore overrule this exception.

For the same reasons we overruled Mr. Falusi's exceptions as to the findings of fact concerning the Firm's letterhead, we overrule Mr. Lang's exception that any ambiguities in the letterhead do not rise to a violation of the MLRPC by clear and convincing evidence.

### Conclusions of Law

We begin our discussion with MLRPC 5.5, as a violation of this Rule provides, in part, the foundation for other MLRPC violations.

### MLRPC 5.5: Unauthorized Practice of Law; Multijurisdictional Practice of Law

Rule 5.5 provides, in part:

(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

(b) A lawyer who is not admitted to practice in this jurisdiction shall not:
(1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or
(2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

*Mr. Falusi*

The hearing judge concluded that Mr. Falusi violated MLRPC 5.5(a) and (b) in his representation of Ms. Daramola, Ms. Ikpim, and Mr. Bean. Mr. Falusi excepts to each of these conclusions.

As we have said, and as Mr. Falusi notes in his exceptions to the hearing judge's conclusions under MLRPC 5.5(a) and (b), we determine "whether an individual has engaged in the practice of law" by focusing on "whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent." *Attorney Grievance Comm'n v. Hunt*, 447 Md. 275, 283 (2016) (quoting *Attorney Grievance Comm'n v. Hallmon*, 343 Md. 390, 397 (1996)). But that is not the only litmus test. "Where trial work is not involved but the preparation of legal documents, their interpretation, the giving of legal advice, or the application of legal principles to problems of any complexity, is involved, these activities are still the practice of law." *Hallmon*, 343 Md. at 397 (citations omitted). Section 10-101 of the Business Occupations and Professions Article defines "practice law" as, among other things, "giving legal advice," and includes "preparing or helping in the preparation of any form or document that is filed

in a court or affects a case that is or may be filed in a court" and "giving advice about a case that is or may be filed in a court."  BOP § 10-101(h)(1)(i), (h)(2)(iii), (h)(2)(iv).

*Ms. Daramola*

Concerning Ms. Daramola, the hearing judge concluded that Mr. Falusi held himself out as a Maryland-licensed attorney to Ms. Daramola and Mr. Jablon, the attorney for Deeds Realty.  The hearing judge found that Mr. Falusi consulted with and provided legal advice to Ms. Daramola, but he never explained to her that his practice was limited to immigration law.  The hearing judge noted that Mr. Falusi failed to inform Mr. Jablon that his practice was limited to immigration law or tell Ms. Daramola that he could not contact Mr. Jablon on her behalf.  The hearing judge also found that Mr. Falusi negotiated and prepared a settlement with Mr. Jablon, causing Mr. Jablon to withdraw his request for a body attachment.  Mr. Lang was not involved in the Daramola matter.

We overrule Mr. Falusi's exceptions.  Mr. Falusi called Mr. Jablon on Ms. Daramola's behalf to negotiate a payment plan for money she owed to Deeds Realty.  Mr. Falusi admitted to relaying to Ms. Daramola his conversations with Mr. Jablon, drafting a payment agreement, and advising Ms. Daramola that she "can't get out of it."  As a result, Mr. Jablon withdrew his request for a body attachment.  Mr. Falusi also held himself out as Ms. Daramola's attorney in his correspondence with Mr. Jablon, and he never explained his jurisdictional limitations to Ms. Daramola or Mr. Jablon.  The record shows that Mr. Falusi violated MLRPC 5.5(a) and (b) by representing Ms. Daramola.

*Ms. Ikpim*

The hearing judge determined that Mr. Falusi's actions "were well beyond assisting

28

a family friend" in Ms. Ikpim's matter. The hearing judge noted that although Mr. Lang filed the complaint in the matter, Mr. Falusi filed the Information Report. In finding a violation of Rule 5.5, the hearing judge considered that the court in Ms. Ikpim's matter identified both Respondents as counsel for Ms. Ikpim, but Mr. Falusi never filed a motion to enter *pro hac vice* or withdraw as counsel.

Mr. Falusi excepts to the hearing judge's conclusion that he violated MLRPC 5.5(a) and (b). We overrule his exception as to MLRPC 5.5(b). Mr. Falusi first contends that the Information Report, at the time he signed and filed it, did not require an attorney's signature (as it does now). Mr. Falusi is correct, as far as that goes. Yet the court still identified him as an attorney of record, and he failed to address the misidentification. Mr. Falusi next argues that he intended to file for *pro hac vice* admission. He argues that "there was no need for the case to continue after the Defendant filed for bankruptcy protection." The complaint was filed on March 26, 2013; the defendant did not notify the court of bankruptcy until the beginning of July. Mr. Falusi failed to move to appear *pro hac vice* or withdraw as counsel for three months. Even if he intended to, he never did, and the fact that he intended to demonstrates that even Mr. Falusi believed that he was representing Ms. Ikpim.

Mr. Falusi's name and "Esq." designation also appeared in the signature block of the complaint, but the block did not include his jurisdictional limitations. Far from the "minimal tangential relation" that Mr. Falusi described to Bar Counsel regarding his involvement in Ms. Ikpim's case, Mr. Falusi testified at his deposition that he "had a lot of involvement" and was "at the center of it." Mr. Falusi also testified that he gave Ms. Ikpim

advice in connection with her claim. Mr. Falusi violated MRLPC 5.5(b) by holding himself out as Ms. Ikpim's attorney. We address Mr. Falusi's exceptions concerning 5.5(a) below.

*Mr. Bean*

In Mr. Bean's case, the hearing judge concluded that Mr. Falusi violated MLRPC 5.5(a) and (b) by representing Mr. Bean. In so concluding, the hearing judge determined that Mr. Bean believed that he retained both Respondents when he retained Lang & Falusi, LLP. The hearing judge stated, "Respondent Falusi did not sign the fee agreement with Mr. Bean merely as a 'witness' nor was Respondent Falusi performing the role of an assistant or paralegal." Rather, although both Respondents participated in Mr. Bean's initial consultation, the hearing judge concluded that it was Mr. Falusi with whom Mr. Bean exchanged the majority of case preparation and strategy emails and telephone conversations. The hearing judge further determined that Mr. Falusi provided legal advice to Mr. Bean several times and, like with Ms. Daramola, Mr. Falusi never told Mr. Bean that he was not a Maryland-licensed attorney.

Mr. Falusi excepts to these conclusions. As is clear from our discussion of the facts, Mr. Bean thought that both Mr. Lang and Mr. Falusi were his attorneys. Mr. Falusi drafted and signed the Agreement, and he exchanged emails with Mr. Bean regarding case strategy and court procedures without Mr. Lang copied. Indeed, on one occasion, when Mr. Bean asked Mr. Falusi if it was normal that he had not yet received a response on his motion to extend, Mr. Falusi replied that he had "[j]ust finished talking to the Court's Clerk about your motion. They have not ruled on it and I am told to check back next week. This essentially is good for you since it allows time for Steve and I to get our game plan on." In

30

that email, Mr. Falusi asked Mr. Bean to copy Mr. Lang on future emails, but Mr. Bean continued to send Mr. Falusi emails separately. On another occasion, in response to Mr. Bean's questions, Mr. Falusi advised that "I will be going to the Court this week, so I can expatiate on what happened. Regarding the complaint, I am working on it right now and hope to file it today through the district court in Silver Spring." Mr. Falusi also sent a letter to Samuel I. White, P.C. as Mr. Bean's attorney.

*Application of MLRPC 5.5(c)(1)*

Mr. Falusi argues that to the extent he represented Mr. Bean and Ms. Ikpim, he was under the supervision of Mr. Lang, an exception provided by MLRPC 5.5(c). Having already determined that Mr. Falusi practiced law, the question becomes whether he engaged in the *unauthorized* practice of law. The Rule provides, in pertinent part:

> (c) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that:
>
> (1) are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter.

To begin, we note that MLRPC 5.5(c)(1) speaks of "association" rather than "supervision," though the parties' arguments in their papers to this Court refer to supervision.[9] The latter term is used more frequently in cases in which the person of interest is a subordinate lawyer or a nonlawyer, like a legal assistant or paralegal, and a MLRPC 5.3 (Responsibilities Regarding Nonlawyer Assistants) violation is alleged against a supervising attorney. *See,*

---

[9] At oral argument in this Court, however, counsel for Mr. Falusi referred to Mr. Falusi's "association" with Mr. Lang.

31

*e.g.*, *Attorney Grievance Comm'n v. Shephard*, 444 Md. 299, 330–31 (2015). The former term, "association," does not appear to have been addressed in our case law under this iteration of the Rule, so we take this opportunity to clarify its scope.

In 2000, the American Bar Association ("ABA") Report of the Commission on Evaluation of the Rules of Professional Conduct proposed expanding the language of Model Rule 5.5. The language was not adopted, but it formed the basis of a further amendment in 2002. In 2002, the ABA Multijurisdictional Practice Commission proposed an amendment to the 2000 language, and the amended language was adopted in August 2002. On December 16, 2003, the Select Committee, appointed by this Court, issued a report recommending adoption of, among other things, the ABA's formulation of Rule 5.5. By a Rules Order dated February 8, 2005, this Court adopted MLRPC 5.5 as recommended by the Select Committee. This version of the MLRPC was first printed in the 2006 Maryland Rules.

The comments to MLRPC 5.5[10] explain some aspects of the multijurisdictional practice framework:

> [5] There are occasions in which a lawyer admitted to practice in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction under circumstances that do not create an unreasonable risk to the interests of their clients, the public or the courts. Paragraph (c) identifies four such circumstances. The fact that conduct is not so identified does not imply that the conduct is or is not authorized.
>
> [6] There is no single test to determine whether a lawyer's services are provided on a "temporary basis" in this jurisdiction, and may therefore be

_____

[10] The comments to the current iteration of the Rule, 19-305.5, are identical in substance to the comments recited here.

32

permissible under paragraph (c).  Services may be "temporary" even though the lawyer provides services in this jurisdiction on a recurring basis, or for an extended period of time, as when the lawyer is representing a client in a single lengthy negotiation or litigation.

[7] Paragraphs (c) and (d) apply to lawyers who are admitted to practice law in any United States jurisdiction, which includes the District of Columbia and any state, territory or commonwealth of the United States.  The word "admitted" in paragraph (c) contemplates that the lawyer is admitted and excludes a lawyer who while technically admitted is not authorized to practice, because, for example, the lawyer is on inactive status.

[8] Paragraph (c)(1) recognizes that the interests of clients and the public are protected if a lawyer admitted only in another jurisdiction associates with a lawyer licensed to practice in this jurisdiction.  For this paragraph to apply, however, the lawyer admitted to practice in this jurisdiction must actively participate in and share responsibility for the representation of the client.

The text of the Rule and the comments thereto are instructive, but they do not explain the meaning of the word "association."  After each proposed ethical rule, the Select Committee report included (and the comments to MLRPC 5.5 themselves include) a "Model Rules Comparison" paragraph.  It stated that "Rule 5.5 is substantially similar to the language of the Ethics 2000 Amendments to the ABA Model Rules of Professional Conduct."  Thus, we find persuasive any interpretation of the ABA Model Rules and look to those interpretations for guidance.

In 2014, the ABA Center for Professional Responsibility released a report cataloging developments to the Model Rules between 1982 and 2013, including the amendments to Model Rule 5.5 at issue here.  ABA, *A Legislative History: The Development of the ABA Model Rules of Professional Conduct, 1982–2013* (Art Garwin ed., 2013).  That report described Model Rule 5.5(c)(1) as such:

New paragraph (c)(1) allows work on a temporary basis in a state by an

> out-of-state lawyer who is associated in the matter with a lawyer admitted to practice in the jurisdiction and who actively participates in the representation. This provision promotes the client's interest in counsel of choice in many circumstances where the client has good reason to engage both a local and an out-of-state lawyer.

*Id.* at 655. As the comments to the Rule explain, "temporary basis" is capable of no precise definition, leaving us to determine on a case-by-case basis whether an out-of-state attorney's presence is temporary.

We find some guidance in two cases decided prior to the adoption of the multijurisdictional practice rules, *Attorney Grievance Commission v. Brown*, 353 Md. 271 (1999), and *Attorney Grievance Commission v. Harper*, 356 Md. 53 (1999). In *Brown*, the respondent Maryland attorney was held to have "associated with" Wilder, an attorney licensed only in Virginia. 353 Md. at 278, 280, 289. Wilder assisted Brown in an employment matter in Maryland. *Id.* at 276. Wilder never signed any court pleadings, but his name appeared in the pleadings' signature blocks; Brown introduced Wilder as his co-counsel at an administrative hearing; and both attorneys' names appeared together on letterhead, but Wilder's jurisdictional limitations were not indicated. *Id.* at 289–90. Under the former rules—which made no formal mention of "association" and did not provide for multijurisdictional practice—these facts were enough to find that Brown violated MLRPC 5.5 by allowing Wilder to engage in the unauthorized practice of law and MLRPC 7.1 and 7.5 for having a misleading letterhead. *Id.* at 290.

In *Harper*, two respondent attorneys were charged with violating MLRPC 5.5. 356 Md. at 60, 61. Kemp, a Maryland attorney, opened an office in Baltimore City with Harper, an attorney licensed in the District of Columbia, to handle personal injury cases in

Maryland. *Id.* at 56–58. The two attorneys used the name "Harper & Kemp," which adorned their shared office suite, stationery, and checks. *Id.* at 64. They disputed whether a partnership agreement was ever reached, but the partnership ostensibly was formed on the basis of a fee-sharing arrangement. *Id.* at 58. In discussing whether Kemp violated then-Rule 5.5(b) by assisting Harper's unauthorized practice in Maryland, we noted:

> Bar Counsel's legal theory of the unauthorized practice aspects of this case is that the lawyer who is admitted in another jurisdiction, but who is not admitted in Maryland, may not practice law in Maryland in partnership with a Maryland attorney, out of an office maintained by the partnership in Maryland, unless the Maryland attorney supervises the work of the unadmitted lawyer. Because both respondents accept this legal analysis, we have no occasion in this matter to explore the theory further.

*Id.* at 61–62. Naturally, Harper argued that Kemp supervised his work in Maryland; Kemp disagreed. *Id.* at 62–63. Harper's primary contention was that "the degree of supervision required to avoid violating BOP § 10-601 is inversely proportional to the knowledge and experience of the unadmitted attorney in the field of practice in which that attorney is engaged." *Id.* at 63. In other words, Harper argued that because he had experience in personal injury cases in the District of Columbia, he needed less supervision from a Maryland attorney.

The hearing judge found that Kemp never supervised Harper, so Harper was essentially arguing that he did not require supervision. *Id.* In dismissing Harper's argument, we stated:

> That argument places an absurd construction on BOP § 10-601. Under that argument an unadmitted attorney may maintain an office for the practice of law in Maryland, and may counsel and represent Maryland residents on legal matters involving the application of Maryland law, simply by arranging to use the name of an admitted attorney in the ostensible firm name of the

unadmitted attorney's practice.

*Id.*

*Brown* and *Harper* provide two different conceptions of what an "association" between two lawyers might look like. In *Brown*, a Maryland attorney enlisted the assistance of a Virginia attorney in one employment case, and the two attorneys shared letterhead. That led to violations of MLRPC 7.1, 7.5, and then-Rule 5.5. In *Harper*, a Maryland attorney essentially allowed a District of Columbia attorney to handle Maryland cases by virtue of a fee-sharing arrangement and shared firm name.

The present case more closely resembles *Brown*, which, under the new multijurisdictional practice rules, might have been decided differently. In this case, at the time in question, Mr. Falusi was admitted to practice law in Massachusetts. The hearing judge found that Respondents' "initial arrangement" was for Mr. Falusi to practice immigration law in Maryland and for Mr. Lang to practice criminal law.[11] Indeed, the hearing judge found that over the course of 2013, Mr. Falusi handled a number of immigration matters in Maryland, and the hearing judge identified deposits into and disbursements from the Operating Account in connection with those matters. The hearing judge did not find, and Bar Counsel does not allege, that—as was the case in *Harper*—Respondents created the Firm as a cover for Mr. Falusi's unauthorized practice of law in Maryland. Rather, throughout the life of the Firm, the hearing judge identified only three

---

[11] There is no indication in the evidence produced at the hearing, and no finding by the hearing judge, that Respondents' business plan ever deviated from that "initial arrangement."

matters that involved Maryland law in which Mr. Falusi participated.

In the matters of Mr. Bean and Ms. Ikpim, Mr. Falusi was associated with Mr. Lang, a Maryland attorney, who actively participated in those cases. In Ms. Ikpim's case, the record is unclear as to how much legal advice Mr. Falusi provided, but the record is clear that Mr. Lang provided legal advice and drafted and signed the complaint. In Mr. Bean's matter, Mr. Lang was very involved with the case, exchanging numerous emails with Mr. Bean. At times, Mr. Falusi exchanged emails with Mr. Bean regarding case strategy and indicated that he was engaging in legal work on Mr. Bean's behalf (e.g., working on drafting a complaint), but Mr. Bean also had significant contact with Mr. Lang. According to their testimony, which was neither disputed by Bar Counsel nor discredited by the hearing judge, Respondents worked together on Mr. Bean's case. Mr. Lang signed all of the pleadings and was the only attorney of record listed in Mr. Bean's cases. Mr. Falusi did send a letter on Firm letterhead to one of Mr. Bean's mortgage servicers on his behalf, but Mr. Lang testified that he saw the letter before it was sent. We are convinced that this constitutes "association," whereby Mr. Lang "actively participate[d] in and share[d] responsibility for the representation of the client[s]." MLRPC 5.5, cmt. 8.

We also conclude that Mr. Falusi provided his legal services on a temporary basis. The record does not reflect that Mr. Falusi made a habit of practicing law in areas other than immigration, given that only three instances of representation during an entire calendar year are at issue here.

This precise factual situation—in which an out-of-state attorney establishes an immigration practice in Maryland, partners with a Maryland attorney, and occasionally

37

assists the Maryland attorney in matters concerning Maryland law—may not have been contemplated by the multijurisdictional practice rules and certainly has not been addressed in our case law. However, the text of the Rule and comments appear to embrace such a situation. Under the circumstances set forth above, Mr. Falusi practiced law in the matters of Ms. Ikpim and Mr. Bean within the confines of MLRPC 5.5(c)(1). Therefore, we sustain Mr. Falusi's exceptions to the hearing judge's conclusions that he violated MLRPC 5.5(a) in the matters of Ms. Ikpim and Mr. Bean.

That said, although an attorney admitted elsewhere may, under MLRPC 5.5(c)(1), provide temporary legal services in association with a Maryland-barred attorney, the foreign attorney must still abide by MLRPC 5.5(b)(2) and make clear that he or she is not admitted in Maryland. In addition to the misleading letterhead and website, Mr. Falusi failed to disclose his jurisdictional limitations to the court, his clients, and the public at large. We conclude that Mr. Falusi violated MLRPC 5.5(b)(2) in all three matters at issue here.

*Mr. Lang*

MLRPC 5.5(a) also prohibits an attorney from assisting another in the unauthorized practice of law. The hearing judge concluded that Mr. Lang violated MLRPC 5.5(a) because he "permitted and assisted Respondent Falusi to practice law at Lang & Falusi, LLP." From the Firm's "ambiguous letterhead and misleading website to the disingenuous pleadings," Mr. Lang was "complicit" in Mr. Falusi's efforts to hold himself out as a Maryland-licensed attorney.

We agree with the hearing judge that Mr. Lang permitted and assisted Mr. Falusi to

38

practice law at Lang & Falusi, LLP in violation of MLPRC 5.5(a). Mr. Lang made no effort to indicate Mr. Falusi's jurisdictional limitations on the Firm's letterhead, website, or pleadings. Mr. Lang filed the complaint and Mr. Falusi filed the Case Information Report during their representation of Ms. Ikpim. The court identified both Mr. Lang and Mr. Falusi as counsel, but at no time did Mr. Lang seek to correct the error. *See Attorney Grievance Comm'n v. Bocchino*, 435 Md. 505, 535 (2013) (Maryland attorney violated MLRPC 5.5(a) by permitting a disbarred attorney to draft, edit, and file pleadings under the respondent attorney's name without reproach; standing by as the disbarred attorney held himself out to a client as her attorney; and failing to enter a separate retainer agreement with that client).

### MLRPC 1.1: Competence

MLRPC 1.1 mandates that attorneys provide competent representation to their clients, which "requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." It is axiomatic that "a complete lack of representation is incompetent representation." *Attorney Grievance Comm'n v. Moore*, 451 Md. 55, 79 (2017). For instance, "the failure to pursue a claim after filing a complaint demonstrates not only incompetence, but also insufficient diligence." *Attorney Grievance Comm'n v. Smith*, 443 Md. 351, 371 (2015).

An attorney also violates MLRPC 1.1 by failing to attend a court appearance, absent sufficient explanation. *Attorney Grievance Comm'n v. Storch*, 445 Md. 82, 87 (2015); *see Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 180 (2015) ("Failure to appear in court when expected to do so is a particularly egregious violation of MLRPC 1.1.");

39

*Attorney Grievance Comm'n v. Shakir*, 424 Md. 197, 205 (2012) ("[A] failure to appear at a client's hearing is a complete failure of representation."). In *Attorney Grievance Comm'n v. Brady*, 422 Md. 441 (2011), we held that an attorney violated MLRPC 1.1 when he failed to file a response to a motion to dismiss or appear at a scheduled status conference for the case. *Id*. at 457; *Attorney Grievance Comm'n v. Butler*, 426 Md. 522, 532–33 (2012) (holding that the attorney's failure to appear at a hearing without obtaining substitute counsel violated MLRPC 1.1 because it "failed to provide his client with a basic element of competent representation").

The hearing judge concluded that both Respondents violated MLRPC 1.1 in their representation of Mr. Bean. Because Mr. Bean retained both Respondents, the hearing judge concluded that they were both "jointly responsible for the incompetent manner in which they handled Mr. Bean's cases."

To support the conclusion that Mr. Lang violated MLPRC 1.1, the hearing judge looked to Mr. Bean's failure to appear at a hearing in Mr. Bean's Second Foreclosure Action. Two days before the hearing, Mr. Lang filed a motion for continuance because of a scheduling conflict, but no documentation accompanied the motion to demonstrate that conflict. Although the court had not granted the motion, Mr. Lang failed to appear at the hearing. Consequently, the court ordered Mr. Bean's foreclosure to proceed.

The hearing judge concluded that both Respondents violated MLPRC 1.1 due to their representation of Mr. Bean in his declaratory judgment action. In that matter, Mr. Falusi helped prepare the complaint, but each Respondent "did little to no work in the matter" after the complaint was filed. For example, neither responded to a motion to

dismiss, and a review of testimony and email exchanges between Mr. Bean and Respondents revealed that "minimal meaningful work was done" in his case. Moreover, although Mr. Lang moved to withdraw his representation of Mr. Bean, the court initially denied his motion due to his noncompliance with the Rules.

### *Mr. Lang*

We agree with the hearing judge that Mr. Lang violated MLRPC 1.1 when he failed to appear at the February 27, 2014 hearing in Mr. Bean's Second Foreclosure Action without prior court approval. *Storch*, 445 Md. at 87; *Brady*, 422 Md. at 457. Mr. Lang also violated MLRPC 1.1 when, after filing a complaint for declaratory judgment, he and Mr. Falusi "did little to no work in the matter": neither responded to a motion to dismiss, which was granted, and email exchanges and between Mr. Bean and the Firm confirm that "minimal meaningful work was done" to advance his case, which the court ultimately dismissed with prejudice. *Smith*, 443 Md. at 371; *Brady*, 422 Md. at 457.

### *Mr. Falusi*

Mr. Falusi excepts that he could not have violated MLRPC 1.1 because he was not licensed to practice in Maryland, was not an attorney of record in Mr. Bean's cases, and did not enter his appearance or file any pleadings in Mr. Bean's cases. Because we concluded above that Mr. Falusi engaged in the authorized practice of law due to his association with Mr. Lang, he was therefore obligated to provide competent representation. He did not as to Mr. Bean and thus violated MLRPC 1.1. After Mr. Falusi helped prepare the complaint in Mr. Bean's declaratory judgment action, he—like Mr. Lang—failed to perform substantive work in that matter, which was ultimately dismissed with prejudice.

41

*Smith*, 443 Md. at 371; *Brady*, 422 Md. at 457.

## MLRPC 1.2(a): Scope of Representation

An attorney violates MLRPC 1.2(a) by "fail[ing] to inform a client of the status of his or her case, thereby denying the client the ability to make informed decisions." *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 182 (2015). In *Attorney Grievance Commission v. Brown*, 426 Md. 298 (2012), we held that an attorney violated MLRPC 1.2(a) when two clients' cases were dismissed due to the attorney's inaction, the attorney failed to inform either client of the dismissals, and he ignored their requests for information. *Id*. at 320.

As above, the hearing judge concluded that both Respondents violated MLRPC 1.2(a) during their representation of Mr. Bean in his First and Second Foreclosure Actions. In so finding, the hearing judge rejected Respondents' claims that they represented Mr. Bean solely for his second mortgage. The hearing judge reasoned that Mr. Falusi's letter of representation to Samuel I. White, P.C. demonstrated "Respondents' knowledge and intent to represent Mr. Bean" in proceedings involving his first mortgage.

Moreover, despite Mr. Bean's "clear" objectives, the hearing judge concluded that "neither Respondent adequately pursued" his case: On several occasions, Mr. Bean was the one to update Respondents as to the opposing party's actions in his case; and he often queried the status of his case and Respondents' efforts to obtain discovery and pursue his defense. The hearing judge noted that even after Mr. Bean placed both Respondents on notice that a foreclosure action was filed as to his first mortgage, neither Respondent took any action.

*Mr. Lang and Mr. Falusi*

Like the attorney in *Brown*, Respondents violated MLRPC 1.2(a) by failing to inform Mr. Bean of the consequences of Mr. Lang's failure to appear at the February 27, 2014 hearing and failing to update Mr. Bean that the court ordered his foreclosure to proceed. In fact, it was Mr. Bean who updated Respondents that the foreclosure was permitted to proceed.[12] *Id.* Neither Respondent did any substantive work in case number 390048V after Mr. Falusi sent the letter to Samuel I. White, P.C. For the reasons stated earlier, we overrule Mr. Falusi's exceptions that deny his role as Mr. Bean's attorney.

## MLRPC 1.3: Diligence

We determined in *Attorney Grievance Commission v. Byrd*, 408 Md. 449 (2009), that an attorney violated MLRPC 1.3 when he failed to appear at a hearing. *Id*. at 478; *see Butler*, 426 Md. at 534 ("A lawyer's failure to appear for scheduled court dates without good reason is a violation of 1.3."); *Attorney Grievance Comm'n v. Gisriel*, 409 Md. 331, 371 (2009) (holding that an attorney violated MLRPC 1.3 by failing to respond to motions

---

[12] Mr. Lang emailed Mr. Bean three days before the February 27, 2014 hearing to inform Mr. Bean that Mr. Lang would not be present and that the court had not yet granted his request to postpone. Mr. Bean replied to both Respondents: "[P]lease keep my [*sic*] updated. What will it mean if they do not grant [the] extension and we are not at the hearing on Friday?" Mr. Falusi responded and provided Mr. Bean only with the case number for the newly-filed declaratory judgment action. On March 5, more than one week after the court ordered Mr. Bean's foreclosure to proceed, Mr. Bean emailed Mr. Falusi to inform him of the court's decision, writing, "I sent Steve and you an email asking what would happen if no one appeared on my behalf and I received no response from either of you regarding that matter. Now I see that they have granted the plaintiffs [*sic*] request to proceed." Mr. Falusi responded first with, "That decision does not bode well for us. It is not good at all[.]" He then outlined their strategy to void the title and file a motion to vacate the February 27 order. Mr. Lang replied a day later and reiterated Mr. Falusi's strategy.

to dismiss and attend a court hearing). In *Mooney*, we held that the same rationale for finding a violation of MLRPC 1.1 could be used to find a violation of MLRPC 1.3. 359 Md. at 94.

The hearing judge concluded that both Respondents violated MLRPC 1.3 due to their failure to "exercise reasonable diligence" when representing Mr. Bean. In support of this conclusion, the hearing judge noted that neither Respondent filed a response to a motion to dismiss in Mr. Bean's declaratory judgment action, and Mr. Lang failed to appear at a hearing on February 27, 2014 in Mr. Bean's Second Foreclosure Action. Moreover, Respondents failed to pursue discovery or meaningfully defend Mr. Bean from foreclosure.

### Mr. Lang

Mr. Lang violated MLRPC 1.3 when he failed to appear at Mr. Bean's February 27, 2014 hearing without prior court approval. *Byrd*, 408 Md. at 478. He also violated MLRPC 1.3 for the same reasons he violated MLRPC 1.1—namely, his failure to pursue Mr. Bean's declaratory judgment action. *Mooney*, 359 Md. at 94.

### Mr. Falusi

Mr. Falusi violated MLRPC 1.3 for the same reasons he violated MLRPC 1.1. *Mooney*, 359 Md. at 94. As above, we overrule Mr. Falusi's exceptions that deny his representation of Mr. Bean. However, we sustain Mr. Falusi's exceptions to the hearing judge's finding that he did not meaningfully pursue discovery or timely respond to Mr. Bean's emails—save for his failure to respond to Mr. Bean's request for information as to the consequences of Mr. Lang's failure to appear, which will be discussed below.

### MLRPC 1.4(a) and (b): Communication

44

In pertinent part, MLRPC 1.4(a) requires an attorney to "keep the client reasonably informed about the status of the matter" and "promptly comply with reasonable requests for information." An attorney violates MLRPC 1.4(b) by failing to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." A violation of MLRPC 1.4 turns on the substance, not regularity, of communication; thus, frequent attorney-client communication does not necessarily negate a violation of MLRPC 1.4. *Attorney Grievance Comm'n v. Rand*, 445 Md. 581, 608 (2015). In *Attorney Grievance Commission v. De La Paz*, 418 Md. 534, 554 (2011), we held that an attorney violated MLRPC 1.4 in part for failing to inform a client that his case had been dismissed, a fact the client learned only by visiting the courthouse. *Id*. at 554. Similarly, the attorney in *Attorney Grievance Commission v. Fox*, 417 Md. 504 (2010), violated MLRPC 1.4 when he did not know that a client's case was dismissed and failed to inform the client of the same. *Id*. at 514, 517. Rule 1.4 violations are "closely linked to violations of" Rule 1.3. *Attorney Grievance Comm'n v. Gelb*, 440 Md. 312, 321 (2014).

The hearing judge concluded that both Respondents violated MLRPC 1.4(a) and (b) in their representation of Mr. Bean during the Second Foreclosure Action. In support, the hearing judge stated that neither Respondent promptly informed Mr. Bean that the court denied their motion to postpone the February 27, 2014 hearing. Moreover, the hearing judge found that Mr. Lang did not advise Mr. Bean of the potential consequences of Mr. Lang's failure to appear at the hearing, and that in fact, it was Mr. Bean who notified Respondents that the foreclosure would proceed because of Mr. Lang's failure to appear. Finally, the hearing judge concluded that Mr. Falusi did not timely respond to Mr. Bean's

45

emails.

*Mr. Lang*

We agree with the hearing judge that Mr. Lang violated MLRPC 1.4(a) and (b) when he did not respond to Mr. Bean's request for information concerning the consequences of Mr. Lang's failure to appear at the February 27, 2014 hearing and when he failed to inform Mr. Bean that the court permitted his foreclosure to proceed. Like the attorneys in *De La Paz* and *Fox*, neither Respondent was aware that the court had ordered Mr. Bean's foreclosure to proceed until Mr. Bean, their client, informed them by email a week after the court order was entered.

*Mr. Falusi*

As with Mr. Lang, Mr. Falusi violated MLPRC 1.4(a) and (b) for his lack of communication concerning Mr. Lang's failure to appear at the February 27, 2014 hearing. While we sustain Mr. Falusi's exceptions concerning the general timeliness of his and Mr. Lang's responses to Mr. Bean's emails, that Respondents regularly communicated with Mr. Bean does not require us to reach the opposite result. *Rand*, 445 Md. at 608.

We overrule Mr. Falusi's exception to the hearing judge's finding that Mr. Bean did not have informed consent when he initialed the flat fee clause in the retainer agreement. In Mr. Lang's deposition, he testified that he did not explain to Mr. Bean any more than what was written in the flat fee clause concerning the placement of Mr. Bean's $3,500.00 in the Operating Account because, in Mr. Lang's words, there were "no risks involved." Comment 6 to this Rule is illustrative, as it highlights Mr. Falusi's dereliction of his obligations to obtain Mr. Bean's informed consent concerning the flat fee clause. Informed

46

consent requires an attorney to give a client "any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the proposed course of conduct and a discussion of the client's or other person's options and alternatives." Such an explanation was not offered here.

### MLRPC 1.5(a): Fees

Under MLRPC 1.5(a), an attorney may not charge an unreasonable fee. "An advance fee given in anticipation of legal service that is reasonable at the time of the receipt can become unreasonable if the attorney does not perform the services expected." *Attorney Grievance Comm'n v. Smith*, 457 Md. 159, 218 (2018).

The hearing judge concluded that both Respondents violated MLRPC 1.5(a) because the $3,500.00 flat fee that Mr. Bean paid to Respondents was unreasonable considering the work they performed. The hearing judge looked to the following facts to support that conclusion. Mr. Bean retained both Respondents, but both "failed to provide competent and diligent representation" or pursue Mr. Bean's objectives. After Respondents filed a petition for declaratory judgment, they performed no further "substantive action": neither Respondent filed any opposition to a motion to dismiss the declaratory judgment action. Moreover, Mr. Lang failed to appear at a hearing in the Second Foreclosure Action, thereby allowing Mr. Bean's foreclosure to proceed.

#### *Mr. Lang and Mr. Falusi*

For reasons stated earlier, we overrule Mr. Falusi's exception that he did not represent Mr. Bean. As detailed below, we also overrule Mr. Falusi's exception that the $3,500.00 flat fee Respondents charged Mr. Bean was reasonable for services rendered.

Indeed, Mr. Falusi maintains that the time Mr. Lang expended on Mr. Bean's case exceeded the $3,500.00 flat fee. Mr. Falusi's exception relies in part on a faulty premise—that the reasonableness of a fee is determined at the time it was charged. *See Smith*, 457 Md. at 218. And we overrule Mr. Falusi's exception that the $3,500.00 flat fee was reasonable because Mr. Bean remained in his home throughout Respondents' representation: such facts go to mitigation, not reasonableness of a fee. *See Attorney Grievance Comm'n v. Jaseb*, 364 Md. 464, 481 (2001).

Neither Respondent provided an accounting of hours spent on services performed, so we agree with the hearing judge that both Respondents violated MLRPC 1.5(a) because the $3,500.00 flat fee that Mr. Bean paid to Respondents was unreasonable given their work performed. In an August 26, 2014 email to Mr. Bean, Mr. Lang listed the work performed in three cases: numbers 377650V; 385388V; and 387359V. By Mr. Lang's own words, we may disregard the hours spent on case number 387359V, the declaratory judgment action, as he testified at his deposition that any work performed on that matter was outside of the flat fee agreement. For case number 377650V, Respondents filed a motion for preliminary injunction. For case number 385388V, they filed a nearly identical motion for preliminary injunction; Mr. Lang failed to attend the hearing, at which the court ordered Mr. Bean's foreclosure to proceed; and Respondents filed a motion to vacate that order and a reply to plaintiff's response to the motion to vacate.

### MLRPC 1.15(a): Safekeeping Property

MLRPC 1.15(a) requires an attorney to hold client and third-party funds in an attorney trust account separate from operating account pursuant to Title 16, Chapter 600 of

the Maryland Rules. For trust account purposes, an "attorney" is defined as "any individual admitted by the Court of Appeals to practice law." Rule 16-602(b). MLRPC 1.15(a) also requires an attorney to create and maintain records accounting for client and third-party funds and preserve the records for at least five years after each record was created.

The hearing judge concluded that both Respondents violated MLRPC 1.15(a). The hearing judge assessed Respondents' action or inaction concerning client or third-party funds: Respondents failed to create or maintain an attorney trust account, instead using the single Operating Account under the name of Lang & Falusi, LLP. Moreover, they deposited legal fees and client funds into the Operating Account and made disbursements, including for legal expenses, from that account. They failed to separate their own funds from client and third-party funds. For example, client fees, including those of Mr. Bean, were indistinguishably deposited into the Operating Account as if earned upon receipt.

*Mr. Falusi*

We sustain Mr. Falusi's exception that he could not have violated MLRPC 1.15(a) because he was not a Maryland-licensed attorney at the time he deposited client or third-party funds into the Lang & Falusi, LLP Operating Account. The plain language of Rule 16-602(b) explicitly defines an "attorney" in such a way as to exclude Mr. Falusi from any obligation to comply with Maryland attorney trust account requirements under 1.15(a) while he was practicing with Lang & Falusi, LLP; his only obligation arose after he was admitted to the Maryland Bar in 2016. We therefore conclude that Mr. Falusi did not violate MLRPC 1.15(a).

49

Even if Mr. Falusi was obligated under MLRPC 1.15(a) to hold in an attorney trust account client or third-party funds related to his immigration practice, neither the retainer agreements for or testimony from those clients are in the record.[13]  Accordingly, we cannot conclude by clear and convincing evidence that Mr. Falusi did not obtain written informed consent from those clients to hold those funds in the Operating Account.  If he were under a duty to hold client or third-party funds in an attorney trust account, his only violation would be as to Ms. Ikpim's $135.00 that was deposited into and disbursed from the Operating Account to pay the filing fees in the Circuit Court for Prince George's County.

*Mr. Lang*

We agree with the hearing judge that Mr. Lang violated MLPRC 1.15(a) when he failed to create and maintain an attorney trust account, hold client and third-party funds separate from Operating Account funds, and maintain (or create) attorney trust account records and hold them for five years after their creation.

Although the hearing judge did not specify which funds Mr. Lang was required to hold separate from his own, we infer that the judge concluded that such funds included the laundry list of client and third-party checks discussed throughout her findings of fact.  In our review of the record, however, it appears that the majority of those client and third-party funds related to Mr. Falusi's immigration clients and his alone—save for the fees or checks related to Mr. Bean, Ms. Ikpim, and Ms. Olivia Lang.  The flat fee check from Mr. Bean, the settlement check for Ms. Olivia Lang, and Ms. Ikpim's check for

---

[13] In Mr. Falusi's exceptions to MLRPC 1.15(a), he stated that his immigration clients signed the Firm's flat fee retainer agreement.

50

payment to the circuit court should have been held in an attorney trust account. Mr. Lang violated MLRPC 1.15(a) by failing to do so.

## MLRPC 1.16(d): Terminating Representation

MLRPC 1.16(d) provides that "[u]pon termination of representation, an attorney shall take steps to the extent reasonably practicable to protect a client's interests." Such steps include returning client files and any unearned fees. An attorney violates Rule 1.16(d) when he or she "fail[s] to honor [the client's] request for a copy of his case file(s) at the end of the representation," *Brown*, 426 Md. at 314, or does not promptly deliver a copy of the client's case file, *Attorney Grievance Comm'n v. Page*, 430 Md. 602, 630–31 (2013). In *Attorney Grievance Commission v. Moore*, 447 Md. 253 (2016), we held that an attorney who failed to return the unearned portion from a flat fee agreement violated MLRPC 1.16(d). *Id.* at 269; *see also Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 336 (2013) (violating MLRPC 1.16(d) by failing to timely return unearned fees).

Because Respondents "failed to take steps to the extent reasonably practicable to protect Mr. Bean's interests" when they terminated their representation in his case, the hearing judge concluded that each Respondent violated MLRPC 1.16(d). The hearing judge found that the following timeline supported that conclusion. In July 2013, Mr. Bean requested a copy of his file, and in response, Mr. Lang filed a motion to withdraw from Mr. Bean's Second Foreclosure Action. Respondents held Mr. Bean's file for one month after the court granted Mr. Lang's motion to withdraw. Moreover, Respondents did not provide Mr. Bean with an accounting of the work performed or refund his fee.

*Mr. Lang and Mr. Falusi*

In a July 23, 2014 email, Mr. Bean first requested that Mr. Lang send his client file. On August 29, Mr. Bean informed Respondents that he would be seeking other counsel and again requested his file. One day later, Mr. Lang informed Mr. Bean that he would be withdrawing as counsel in his declaratory judgment action and would send his file. At this point, Respondents should have returned Mr. Bean's client file and any unearned fees. However, Mr. Lang did not send Mr. Bean's client file until at least November 12, 2014, and only after repeated demands. Between September 9 and 10, Mr. Bean inquired as to the status of his file and provided a Kentucky address to which Mr. Lang could send it; Mr. Lang responded and acknowledged that he was fired. On November 12, Mr. Bean told Mr. Lang that he had still not received his file and that the "harm this is causing will be irreparable." Mr. Lang responded that evening, writing that he would mail the file the following day. Such untimeliness to a client's request for his or her file constitutes a clear violation of MLRPC 1.16(d). *Page*, 430 Md. at 630–31; *Brown*, 426 Md. at 314. As reflected in this Court's discussion of MLRPC 1.5(a), Respondents' $3,500.00 flat fee was unreasonable, and their failure to return any unearned fees after they terminated representation violated MLRPC 1.16(d). *Moore*, 447 Md. at 269.

Mr. Falusi excepts to the conclusion that he violated MLRPC 1.16(d) because, as above, he argues that he did not represent Mr. Bean and therefore could not have terminated any such representation. We overrule this exception for the reasons stated earlier.

## MLRPC 7.1(a): Communications Concerning a Lawyer's Services; MLRPC 7.5(a): Letterhead

MLRPC 7.1 provides that an attorney "shall not make a false or misleading

communication about the lawyer or the lawyer's services." A communication becomes false or misleading when it "omits a fact necessary to make the statement considered as a whole not materially misleading." Omitting such a fact in an attorney's office letterhead also violates MLRPC 7.5(a), which prohibits lawyers from using office letterhead in violation of MLRPC 7.1. In *Attorney Grievance Commission v. Brown*, 353 Md. 271 (1999), Brown, a Maryland attorney, associated with a Virginia attorney (Wilder) while representing a client before a Maryland administrative agency. Brown used letterhead that included Wilder's name as co-counsel, but he failed to indicate that Wilder was not licensed in Maryland. We held that Brown violated both MLRPC 7.1 and 7.5(a) because his "omission on his letterhead that Mr. Wilder was not licensed to practice in Maryland courts without special admission could have misled each of his clients . . . into believing he or she was receiving proper representation from both attorneys." *Id*. at 290.

## Mr. Lang and Mr. Falusi

The hearing judge concluded that both Respondents violated Rule 7.1(a),[14] given misleading content in their letterhead and website concerning jurisdictional and practice area limitations. According to the hearing judge, Respondents "continuously" used letterhead that did not disclose that Mr. Falusi's practice was limited to immigration law and that he was not licensed to practice law in Maryland during this period. Moreover, the letterhead did not differentiate which principal in Lang & Falusi, LLP was licensed to

---

[14] On page 25 of the hearing judge's Findings of Fact and Conclusions of Law, the language for MLRPC 7.5(a) (Firm Names and Letterheads) is listed below the court's recitation of MLRPC 7.1(a). However, MLRPC 7.5(a), as a violation or otherwise, is not mentioned in the remainder of the Conclusions of Law.

practice in Maryland. The hearing judge concluded that the firm's website was misleading as to whether Mr. Falusi's practice was limited to immigration law.

As in *Brown*, Mr. Lang associated with Mr. Falusi, but the Firm's letterhead omitted Mr. Falusi's jurisdictional limitations. 353 Md. at 290. We therefore agree with the hearing judge that the Firm's letterhead was materially misleading and thus both Respondents violated MLRPC 7.1 and 7.5(a).

### Rule 16-603: Duty to Maintain Account;
### Rule 16-604: Trust Account Required Deposits;
### Rule 16-601.1: Attorney Trust Account Record-Keeping

In *Attorney Grievance Commission v. Ellison*, 384 Md. 688 (2005), we held that an attorney violated MLRPC 1.15(a) and Rules in Title 16, Chapter 600 because "a set of facts that constitutes a violation of one may violate also the other without there necessarily arising an unfairly duplicative set of sanctions." *Id.* at 709 (violating MLRPC 1.15(a) and Rules 16-606 and 16-609); *id.* ("[I]t is not outside the purview of this Court to draft overlapping rules, a narrow one for managing attorney client trust fund accounts and a broader one to set a minimum standard of professional conduct in dealing with attorney/client trust funds.").

The hearing judge concluded that Respondents violated Rule 16-603 because they failed to maintain an attorney trust account throughout the lifetime of the Firm and accepted funds intended for the benefit of third parties or clients.

The hearing judge concluded that both Respondents violated Rule 16-604. The hearing judge observed that they shared a single Operating Account under the name of Lang & Falusi, LLP. The hearing judge underscored that on several occasions,

Respondents deposited client and third-party fees into the Operating Account, all or some of which were later dispersed to clients or third parties, including the U.S. Department of Homeland Security. At least twice, the hearing judge noted, Respondents deposited third-party settlement checks made payable to Lang & Falusi, LLP and their clients into the Operating Account, later disbursing these funds to themselves and their clients.

The hearing judge concluded that both Respondents violated Rule 16-606.1 because they did not maintain records of the client funds for Mr. Bean, Ms. Ikpim, and Ms. Daramola that were deposited into and disbursed from the Operating Account.

### *Mr. Falusi*

Mr. Falusi was not an "attorney" as it is defined in Title 16, Chapter 600. Md. Rule 16-602(b). As a result, he was under no obligation to maintain an attorney trust account, make the required deposits into that account, or maintain records for that account during his time at Lang & Falusi, LLP. We therefore sustain his exceptions concerning his violations of these Rules. That Mr. Falusi escapes from a violation of MLRPC 1.15(a) and other attorney trust account rules simply because he is not a member of this Bar is not meant to lighten our understanding of his misconduct or encourage others to do the same.

### *Mr. Lang*

For the reasons stated earlier in our discussion of MLRPC 1.15(a), we conclude that Mr. Lang violated Rules 16-603, 16-604, and 16-601.1 for his conduct handling client or third-party funds during his representation of Ms. Ikpim and Ms. Olivia Lang.

### BOP § 10-601: Bar Admission Required to Practice Law in the State

The hearing judge concluded that both Respondents violated BOP § 10-601,

although Bar Counsel did not charge Mr. Lang with that violation. The hearing judge reasoned that Mr. Falusi gave legal advice to Mr. Bean, Ms. Ikpim, and Ms. Daramola, negotiated settlements, and held himself out as an attorney in his "overall conduct." The hearing judge determined that Mr. Lang consented to Mr. Falusi's unauthorized practice of law, given the Firm's website and letterhead, his consultation with clients, and misleading filings.

For the reasons stated in our discussion of MLRPC 5.5, we agree with the hearing judge that Mr. Falusi violated BOP § 10-601. Mr. Lang, however, "may not be found guilty of violating a Rule of Professional Conduct unless that Rule is charged in the Petition for Disciplinary or Remedial Action." *Attorney Grievance Comm'n v. Brigerman*, 441 Md. 23, 35 (2014) (quoting *Attorney Grievance Comm'n v. Sapero*, 400 Md. 461, 487 (2007)). Although BOP § 10-601 is a statute rather than an ethical rule promulgated by this Court, the same logic applies: Mr. Lang was afforded no notice of this charge. *See In re Ruffalo*, 390 U.S. 544, 550 (1968). We shall not find a violation where none was charged.

### MLRPC 8.1(a) and (b): Bar Admissions and Disciplinary Matters

An attorney violates MLRPC 8.1(a) "*whenever* an attorney makes intentional misrepresentations to Bar Counsel" in connection with a disciplinary matter. *Attorney Grievance Comm'n v. Mitchell*, 445 Md. 241, 259 (2015) (emphasis added). Such misrepresentations include intentionally misleading Bar Counsel about "the attorney's knowledge and ability to provide information to assist in the investigation." *Attorney Grievance Comm'n v. Wills*, 441 Md. 45, 56 (2014); *see Attorney Grievance Comm'n v. Lee*, 393 Md. 385 (2006) (holding that an attorney violated MLRPC 8.1(a) when he falsely

told Bar Counsel that he was unable to obtain transcripts). Failure to respond to Bar Counsel's lawful request for information constitutes a violation of Rule 8.1(b). *See Wills*, 441 Md. at 56 ("Belated participation in a Bar Counsel investigation does not overcome a violation of failing to respond to Bar Counsel in the first instance."). In *Attorney Grievance Commission v. Grey*, 448 Md. 1 (2016), an attorney failed both to respond to Bar Counsel until a second letter notifying the attorney of a complaint or to provide copies of a client file and trust account records. For his inaction as to Bar Counsel's lawful requests, he violated MLRPC 8.1(b). *Id*. at 26–27.

The hearing judge concluded that both Respondents violated MLRPC 8.1—Mr. Lang for his actions in this attorney grievance proceeding and Mr. Falusi for his failure to disclose material information in his application to the Maryland Bar.

### *Mr. Lang*

Bar Counsel excepts to the hearing judge's conclusion that Mr. Lang violated MLRPC 8.1 generally, noting that the hearing judge's comments demonstrate that Mr. Lang violated subsections (a) and (b) of the rule. We sustain Bar Counsel's exception and conclude that Mr. Lang violated MLRPC 8.1(a) and (b).

The hearing judge concluded that Mr. Lang violated MLRPC 8.1 based on the following facts. Bar Counsel sent an initial notice to Mr. Lang that he was the subject of a complaint. After receiving no response, Bar Counsel sent a second letter, and Mr. Lang filed an answer to the complaint. In reply to Bar Counsel's request of an accounting of client fees and disbursements, Mr. Lang did not attempt to retrieve any client records or PNC Bank records, instead stating that an assistant handled the bookkeeping. Although

Mr. Lang maintained that did not have any such records or hold client funds, Lang & Falusi, LLP held several client checks—including Mr. Bean's $3,500.00—in its Operating Account. The Firm did not hire staff, but Mr. Lang falsely stated to Bar Counsel that firm personnel performed various functions in the office. The hearing judge found Mr. Lang's statements to be "not founded" and designed "to minimize his culpability."

Mr. Lang knowingly made a false statement of material fact in violation of MLRPC 8.1(a) when he wrote Bar Counsel that he held no client funds—when in fact he did, including Mr. Bean's $3,500.00—and that he had staff—when in fact Lang & Falusi, LLP hired no staff. *Mitchell*, 445 Md. at 259. The hearing judge concluded that such statements were "unfounded" and done to "minimize his culpability." *See Wills*, 441 Md. at 56. As for subsection (b) and like the attorney in *Grey*, Mr. Lang failed to timely respond to Bar Counsel's requests for information or provide trust account and client records. He did not respond to the initial letter Bar Counsel sent him; rather, only after a second letter did he answer the complaint. *Wills*, 441 Md. at 56. In response to Bar Counsel's request for an accounting of disbursements and client fees, Mr. Lang indicated that he did not have access to those records because they were handled by an assistant. Moreover, he made no attempt to obtain PNC bank records or client records for Bar Counsel. Based on these facts, Mr. Lang violated MLRPC 8.1(a) and (b).

### *Mr. Falusi*

Again, because the hearing judge concluded that Mr. Falusi violated MLRPC 8.1 generally, Bar Counsel excepts and would have us find specific violations of MLRPC 8.1(a) and (b). Mr. Falusi insists that he has violated neither. We sustain Bar Counsel's

58

exception and overrule Mr. Falusi's.

The hearing judge concluded that Mr. Falusi violated MLRPC 8.1 based on the following facts. When Mr. Falusi signed his Character Questionnaire for the Maryland Bar on May 16, 2011, he affirmed his existing and continuing duty to provide full, candid disclosure of accurate and current responses until he was admitted to the Bar. Such disclosures included every position of full- or part-time employment that Mr. Falusi held during the past five years. Mr. Falusi's counsel submitted supplemental information on his behalf, but Mr. Falusi "knowingly failed to disclose material information" regarding his employment at the Firm as an attorney practicing law in Maryland. Although his application remained pending before the Character Committee throughout the duration of Lang & Falusi, LLP, at no time did Mr. Falusi disclose to the State Board of Law Examiners or the Character Committee that he established Lang & Falusi, LLP for the purpose of practicing law in Maryland and that he was actively practicing law in Maryland as a principal at the Firm. The hearing judge stated that such failure was "for the purpose of concealing from an admissions authority that he had engaged in the unauthorized practice of law in Maryland prior to his admission to the Bar."

In May 2011, moreover, Mr. Falusi answered "No" to Question 17(b) of the Character Questionnaire as to whether he had "ever been the subject of a complaint or of a disciplinary investigation or proceeding concerning [his] conduct as an attorney or as a member of any other profession." After Mr. Falusi's receipt of Bar Counsel's May 16, 2016 letter and before he was admitted to the Bar on June 1, 2016, he did not amend his answer to Question 17(b) that he was then subject to a disciplinary complaint. As a result,

59

the hearing judge determined that Mr. Falusi "intentionally failed to disclose that he was the subject of a disciplinary complaint," a disclosure that he was obligated to make until he was admitted to the Bar.

In his exceptions, Mr. Falusi first points to his testimony before the hearing judge that in September 2015, "he disclosed his employment history after his 2011 Maryland Bar application, and that the firm Lang & Falusi, LLP was listed among other places." There is no evidence in the record to support this claim; the hearing judge heard this testimony, weighed it against other evidence in the case, and determined it was not credible. He asks us to look to his testimony before the State Board of Law Examiners on April 8, 2016. In that hearing, Mr. Falusi offered the following testimony:

> Q    Okay. Are you working now?
> A    Yes.
> Q    Where are you working?
> A    Well I have an immigration practice at this moment which is trying to get off the ground.
> Q    Is it just you?
> A    Just me. Yes.
> * * *
> Q    How long has your practice been up and running?
> A    It's off and on. It's been off and on since 2012, 2013, sorry.
> Q    Do you have an office?
> A    Yes, sir.
> Q    Okay, one thing at a time. You said off and on since when?
> A    2013.
> Q    Where is your office?
> A    Silver Spring.
> Q    How do you practice in Silver Spring without a Maryland license?
> A    No, I do immigration law.
> * * *
> Q    Okay. And you said it's just you?
> A    Yeah.

Mr. Falusi failed to disclose his partnership and role in Lang & Falusi, LLP, during

60

this testimony or otherwise. We understand Mr. Falusi's claim that his answers during the hearing were technically responsive to the questions asked, especially considering that Mr. Falusi did not believe he was engaged in the unauthorized practice of law. But when coupled with his failure to submit a complete resume in 2013 or anytime thereafter, the story of his testimony becomes less sympathetic. Mr. Falusi created a Maryland entity, engaged in the practice of law, and failed to disclose any of it in violation of his continuing duty to supplement his Bar application. Mr. Falusi also failed to disclose that he was the subject of a disciplinary complaint before he was admitted to the Maryland Bar. We sustain Bar Counsel's exception and conclude that Mr. Falusi violated MLRPC 8.1(b).

These same facts do not warrant finding a violation of MLRPC 8.1(a), but other facts do. The hearing judge did not make specific findings as to that rule, so Bar Counsel directs our attention to other parts of the hearing judge's conclusions of law. The hearing judge, in discussing MLRPC 8.4, found that "Mr. Falusi's statements made to the Board of [Law] Examiners . . . reveal intent to deceive." As we noted above, Mr. Falusi's answers during the hearing were responsive to the questions and appear consistent with his own characterization of his law practice, but the hearing judge was in the best position to gauge Mr. Falusi's credibility, and we accept that determination. Bar Counsel also argues that Mr. Falusi, in response to Bar Counsel's question whether Mr. Falusi had a relationship with Mr. Bean, stated that he "did not have any relationship with Mr. Bean." In Bar Counsel's view, this constitutes a knowingly false statement, and we agree. The full written exchange between Bar Counsel and Mr. Falusi on this issue was as follows:

Bar Counsel: Explain your relationship with Mr. Bean, as well as the full

extent of your involvement in Mr. Bean's representation as provided in the Flat Fee Agreement.

Mr. Falusi:   I did not have any relationship with Mr. Bean. Mr. Bean came to our office looking for legal representation and I advised him that I was not licensed in the State of Maryland but Mr. Lang who practices in the area would represent him. I also communicated with Mr. Bean from time to time, assisting Mr. Lang, Esquire.

Bar Counsel: Explain your relationship with Mr. Steven Lang. Please confirm that you were Mr. Lang's partner. Please confirm that you were at no time an assistant to or employee of Mr. Lang.

Mr. Falusi:   Mr. Lang and I established a law firm, Lang & Falusi, LLP in 2013. I practiced immigration law while he does non-immigration practice work. I was not Mr. Lang's employee or assistant but infrequently assisted him by performing paralegal work if/when needed.

Even if Mr. Falusi believed he did not represent Mr. Bean, Mr. Falusi's involvement in Mr. Bean's case went far beyond what he described to Bar Counsel. As explained above, Mr. Falusi emailed Mr. Bean without Mr. Lang copied to explain court procedures and case strategy. He also said he was working on drafting a legal document for Mr. Bean and would file it with the court later that day. Further, he sent a letter of representation to Samuel I. White, P.C., a matter in connection with Mr. Bean's first mortgage, declaring that Mr. Bean had retained the Firm and stating Mr. Bean's position in the matter. Mr. Lang originally claimed to Mr. Bean that he had no involvement in that case.

Mr. Falusi raises a number of non-meritorious defenses. He claims that he did not know whether to submit an updated resume to the Character Committee or the State Board, given that his application was completed in 2011. He also appears to argue that four years had elapsed since he swore that his application was true and complete and that he was under

a continuing duty to supplement it, which shows that he did not intentionally conceal anything. We are not convinced. Mr. Falusi practiced at the Firm in 2013, a fact that he surely did not forget, and he was asked about his practice of law in Maryland at the Board hearing in 2016. He also contends that he thought the Character Committee already had information regarding his disciplinary matter because the Committee is "part" of the Court of Appeals. Even if that were true, that is no excuse not to disclose to anyone at all. Mr. Falusi's conduct violated MLRPC 8.1(a).

### MLRPC 8.4: Misconduct

Rule 8.4(b) is violated when an attorney "commit[s] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." We have held that engaging in the unauthorized practice of law in violation of MLRPC 5.5 and BOP § 10-601 (a misdemeanor, per BOP § 10-606) violates 8.4(b). *Attorney Grievance Comm'n v. Tanko*, 427 Md. 15, 47 (2012). It is likewise professional misconduct under MLRPC 8.4(c) for an attorney to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation," whereby "dishonest acts, in and of themselves are violative of [MLRPC] 8.4(c)." *Attorney Grievance Comm'n v. Barnett*, 440 Md. 254, 266 (2014) (quoting *Attorney Grievance Comm'n v. Gisriel*, 409 Md. 331, 383 (2009)). False statements to Bar Counsel during an investigation violate MLRPC 8.4(c). *Attorney Grievance Comm'n v. Dominguez*, 427 Md. 308, 324 (2012). An attorney violates MLRPC 8.4(d) by "engag[ing] in conduct that is prejudicial to the administration of justice." Generally, an attorney violates MLRPC 8.4(d) "when his or her conduct impacts negatively the public's perception or efficacy of the courts or legal profession." *Barnett*,

440 Md. at 267 (violating 8.4(d) in part for acting without client knowledge or consent concerning the procedural posture of a client's case and failing to communicate those actions). Of note here, misconduct that constitutes a violation of 8.4(c) may also violate 8.4(d). *Attorney Grievance Comm'n v. Payer*, 425 Md. 78, 95 (2012) (false statements to Bar Counsel violated MLRPC 8.4(c) and (d)); *Attorney Grievance Comm'n v. Brown*, 415 Md. 269, 279, 999 A.2d 1040 (2010) (same).

The hearing judge concluded that both Respondents violated MLRPC 8.4, though for different reasons. In concluding that Mr. Lang violated 8.4, the hearing judge determined that Mr. Lang's misconduct was "intentional, misleading, and prejudicial to the administration of justice." The hearing judge looked to Mr. Lang's failing to appear for a court hearing and backdating his motion to withdraw to comply with the Maryland Rules. For the hearing judge, such actions not only were in "direct contradiction to the [MLRPC]," but they "negatively impact the sanctity of the legal profession."

The hearing judge concluded that Mr. Falusi's conduct was similarly "prejudicial to the administration of justice" in violation of MLRPC 8.4. The hearing judge assessed that prior to his admission to the Maryland Bar, Mr. Falusi "repeatedly represented himself as a Maryland licensed attorney." The hearing judge concluded that when Mr. Falusi attempted to gain admission, he "neglected" to inform the Character Committee of a pending disciplinary action against him; failed to submit an accurate resume "to reflect the actual legal work he was undertaking" as a principal at Lang & Falusi, LLP; and made statements and submitted documents to the State Board of Law Examiners that "reveal[ed] intent to deceive."

*Mr. Lang*

Bar Counsel excepts to the hearing judge's failure to conclude that Mr. Lang violated specific subsections of MLRPC 8.4. Bar Counsel contends that the hearing judge's findings clearly support Mr. Lang's violations of MLRPC 8.4(a), (c), and (d). We agree and sustain Bar Counsel's exceptions.

The record establishes that Mr. Lang's actions were "intentional" and "misleading" such that he violated MLRPC 8.4(c). He made material misrepresentations to Bar Counsel during the course of this investigation, *Dominguez*, 427 Md. at 324; and he backdated a motion to comply with the Rules of Civil Procedure to withdraw his appearance in Mr. Bean's case. We also agree that his "conduct is in direct contradiction to the Rules of Professional Conduct," "prejudicial to the administration of justice," and "negatively impact the sanctity of the legal profession" so as to violate MLRPC 8.4(d). Mr. Lang's misconduct in this attorney grievance proceeding by itself constitutes a violation of Rule 8.4(d), *Payer*, 425 Md. at 95, and his backdated motion, attorney trust account violations, and violations of MLRPC 1.1, 1.3, and 1.4 further bolster our conclusion. *See Barnett*, 440 Md. at 267 ("Barnett's actions violated [the client's] trust and her reasonable expectation that Barnett would diligently and honestly represent her interests. Such misconduct negatively impacts the public's perception of the legal profession."). Finally, our earlier analysis concerning Mr. Lang's violations of MLRPC 1.1, 1.2(a), 1.3, 1.4(a) and (b), 1.5(a), 1.15(e), 1.16(d), 7.1(a), 7.5(a), and 8.4(c) and (d), also supports a conclusion that Mr. Lang violated 8.4(a). *Foltz*, 411 Md. at 411.

*Mr. Falusi*

65

Bar Counsel also excepts to the hearing judge's general conclusion that Mr. Falusi violated MLRPC 8.4, asking us to confirm that he violated 8.4(a), (b), (c), and (d). Bar Counsel avers that Mr. Falusi violated MLRPC 8.4(c) by repeatedly representing himself as a Maryland attorney; failing to disclose a pending disciplinary action against him; submitting an "inaccurate" resume to the Board; and making false statements to Bar Counsel. We agree with Bar Counsel that Mr. Falusi's conduct listed above violated 8.4(c). We also agree that Mr. Falusi violated 8.4(b) because, at the very least, he engaged in the unauthorized practice of law by representing Ms. Daramola in contravention of BOP § 10-601.

Mr. Falusi disputes that he violated MLRPC 8.4 in his exceptions, arguing that he did not practice law, he did not intentionally conceal his disciplinary matter, and his conduct was not prejudicial to the administration of justice. The hearing judge concluded, and Bar Counsel agrees, that Mr. Falusi's conduct was prejudicial to the administration of justice, which is a violation of 8.4(d). The same conduct that constituted a violation of 8.4(c) likewise constitutes a violation of 8.4(d). Mr. Falusi also necessarily violated 8.4(a) by committing violations of MLRPC 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16, 5.5, 7.1, 7.5, 8.1, and 8.4.

### Aggravating Factors

In *Attorney Grievance Commission v. Shuler*, 454 Md. 200 (2017), we enumerated the aggravating factors upon which we rely in part to determine the appropriate sanction:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to

comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Id*. at 218 (quoting *Attorney Grievance Comm'n v. Shuler*, 443 Md. 494, 506–07 (2015)). For both Respondents, the hearing judge found that the following aggravating factors were present: a pattern of misconduct; multiple violations; and a refusal to acknowledge the wrongfulness of the misconduct. We agree.

### *Mr. Lang*

It is self-evident from our earlier discussion that Mr. Lang engaged in a pattern of misconduct and violated multiple Rules of Professional Conduct. From the beginning, moreover, Mr. Lang has failed to acknowledge any wrongdoing. Such failures are either due to his lack of understanding, as with the duty to maintain an attorney trust account and the other obligations accompanying that duty; his genuine, but wholly misguided, belief that his failure to appear at Mr. Bean's hearing was appropriate; or his erroneous conviction that Mr. Bean had no right to any portion of his fee simply because he remained in his home throughout the litigation.

Bar Counsel excepts to the hearing judge's failure to find that Mr. Lang's conduct was selfishly or dishonestly motivated and that Mr. Lang engaged in bad faith obstruction of and other misconduct during this attorney grievance proceeding. We sustain these exceptions. Mr. Lang's misrepresentations to Bar Counsel during the course of its

investigation in this matter were designed to, in the words of the hearing judge, "minimize his culpability" and therefore were motivated by selfish or dishonest interests. Almost from the moment Lang & Falusi, LLP was formed and in this disciplinary proceeding, Mr. Lang has engaged in misconduct violative of the MLRPC. His misrepresentations to Bar Counsel were in bad faith in an attempt to avoid compliance with MLRPC 8.1(a) and (b).

Bar Counsel excepts to the hearing judge's failure to find that Mr. Lang is indifferent concerning returning any portion of Mr. Bean's $3,500.00 fee. We likewise sustain this exception. Although we do not decide whether Lang & Falusi, LLP earned the full value of Mr. Bean's $3,500.00, Mr. Lang's insistence that restitution is not—and could not—be owed highlights his indifference to righting any wrong that may be owed to Mr. Bean.

Finally, Bar Counsel excepts to the hearing judge's failure to find that Mr. Lang is likely to repeat his misconduct. We agree and sustain this exception. Until Mr. Lang becomes aware of his duties under the MLPRC, particularly those with respect to attorney trust accounts, he is likely to repeat his misconduct.

### *Mr. Falusi*

Mr. Falusi attacks the hearing judge's conclusions with respect to aggravating factors, arguing that the hearing judge failed to articulate a basis for those findings. The aggravating factors are self-explanatory, but we reach a different conclusion because we have reached different conclusions with respect to the rules violated. Mr. Falusi did not engage in a pattern of misconduct, but he did commit multiple violations and has refused to acknowledge the misconduct's wrongful nature. In the face of clear and convincing evidence that Mr. Falusi engaged in the unauthorized practice of law and deceived the State

Board and Bar Counsel—knowingly or not—Mr. Falusi still has not acknowledged wrongdoing on his part. The greatest concession he appears to have made is that the Firm's letterhead was not entirely clear. Mr. Falusi's exception as to a pattern of misconduct is sustained, but his other exceptions are overruled.

## Mitigating Factors

We have recognized the following mitigating factors:

(1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to the Commission or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

*Attorney Grievance Comm'n v. Sperling*, Misc. Docket AG Nos. 40, 76, 2018 WL 2296600, at *37 (Md. May 21, 2018) (quoting *Attorney Grievance Comm'n v. Shuler*, 443 Md. 494, 507 (2015)).

The hearing judge did not find that Respondents established any mitigating factors by a preponderance of the evidence.

## *Mr. Lang*

Mr. Lang excepts to the hearing judge's failure to find any mitigating factor and

69

avers the presence of several.

We sustain Mr. Lang's exception to the hearing judge's failure to find that no attorney disciplinary action was previously brought against him. *Sperling*, 2018 WL 2296600, at *37. He also excepts to the hearing judge's failure to find that his inexperience mitigates his misconduct. We sustain this exception. We have repeatedly mitigated findings of wrongdoing where, as here, a recently-admitted attorney was involved. *See, e.g.*, *Attorney Grievance Comm'n of Maryland v. Jaseb*, 364 Md. 464 (2001) (involving an attorney of three years). While Mr. Lang was barred in Massachusetts in 2010, he was not admitted to the Maryland Bar until November 2012, the month Mr. Falusi registered Lang & Falusi, LLP. Most of Mr. Lang's MLRPC violations occurred while he was a partner at the Firm and a member of the bar for, at most, two and a half years. Even throughout Bar Counsel's investigation of Mr. Lang, he had been practicing in Maryland for fewer than three years.

Although not a mitigating factor we recognize, Mr. Lang excepts to the hearing judge's failure to find that his actions lacked any moral turpitude. We agree and sustain this exception. Moral turpitude, as this Court has defined it, involves "an act of baseness, vileness or depravity." *Attorney Grievance Comm'n of Maryland v. Marcalus*, 414 Md. 501, 518 (2010) (quoting *Attorney Grievance Comm'n of Maryland v. Proctor*, 309 Md. 412, 419 (1987)). In some sense, Bar Counsel agrees, as Bar Counsel did not except to the hearing judge's failure to conclude that Mr. Lang violated MLRPC 8.4(b), generally implicated only when it involves a moral turpitude. A highly fact-specific inquiry, *id.*, we can find no example of this Court finding moral turpitude for the acts committed by Mr.

70

Lang.

We overrule Mr. Lang's exception to the hearing judge's failure to find that he did not intend to violate and was unaware that he was violating the MLRPC. He argues that because he believed that he was merely making "mistakes," neither he nor Mr. Falusi "fail[ed] to admit wrongdoing." Although he does not identify in his Exception/Recommendation which "mistakes" he specifically made, Mr. Lang emphasizes that he and Mr. Bean communicated over one hundred times by email and he was not on the Operating Account and was unaware that it held client funds. The email communications between Mr. Lang and Mr. Bean are more damning than saving, as they highlight his unresponsiveness to Mr. Bean, incompetence in the law and procedure of mortgage foreclosures, and failure to adequately pursue his defense. As for the Operating Account, we reiterate our analysis above in which we found violations of the MLRPC and the Maryland Rules for Mr. Lang's misconduct concerning the Operating Account.

We also overrule Mr. Lang's exception that "no one was damaged or hurt" by Mr. Lang's conduct because Mr. Bean remained in his home throughout the foreclosure proceedings. In *Attorney Grievance Comm'n of Maryland v. Jaseb*, we addressed a similar contention in the context of a late-filed bankruptcy petition. There, "Respondent and the legal community are fortunate that the client was not prejudiced by Respondent's negligent conduct. That fact alone, however, does not define an appropriate sanction." 364 Md. at 581. Unlike the client in *Jaseb*, who was unscathed by the attorney's misconduct, Mr. Bean's foreclosure proceeded because of Mr. Lang's failure to appear at the February 27, 2014 hearing and failure to counsel Mr. Bean as to the consequences of his absence.

71

Lastly, Mr. Lang excepts to the hearing judge's failure to find that he "has become more careful" since he began practicing law in Maryland in 2013. We overrule this exception, as Mr. Lang continued to violate the MLRPC throughout his investigation by Bar Counsel beginning in 2014.

## *Mr. Falusi*

We identify two mitigating factors in Mr. Falusi's case, though the hearing judge found none. We first recognize Mr. Falusi's absence of prior discipline and find that to be a mitigating factor here. As for the clear absence of dishonest or selfish motive, we have already concluded that Mr. Falusi engaged in intentional deceit during his Bar admission proceedings with respect to his involvement with Lang & Falusi, LLP. Mr. Falusi also fails to satisfy the fourth factor (timely good faith efforts to rectify the misconduct) because he engaged in the unauthorized practice of law and then sought to conceal it from the investigating authorities. As for the fifth factor, we do not find that Mr. Falusi's "voluntary" submission to an interview with Bar Counsel to be a mitigating factor, considering that Mr. Falusi misrepresented his involvement in Mr. Bean's case. We do find, however, that Mr. Falusi, as Mr. Lang, was inexperienced and therefore that mitigating factor weighs in his favor.

## V.

## **The Sanction**

### *Mr. Lang*

While Bar Counsel recognizes that this Court has indefinitely suspended attorneys for assisting in the unauthorized practice of law, it recommends that this Court disbar Mr.

Lang due to his "breadth of misconduct," which include MLRPC 8.1 and 8.4 violations. In the view of Bar Counsel, the ultimate sanction of disbarment is supported by the following: Mr. Lang was dishonest and did not cooperate in Bar Counsel's investigation; he failed to attend a hearing on behalf of Mr. Bean and attempted to backdate a motion to comply with the Maryland Rules; to "minimize his culpability," he told Bar Counsel that other staff or personnel performed functions within the Firm when in fact Lang & Falusi, LLP hired no staff; he assisted Mr. Falusi to practice law in Maryland in contravention of the MLRPC; and the hearing judge found his actions to be "intentional, misleading, and prejudicial to the administration of justice." Notably, Mr. Lang's "Exception/Recommendation" does not include a recommendation for sanction.

In *Attorney Grievance Commission v. Hecht*, 459 Md. 133 (2018), a then-suspended attorney held himself out as authorized to practice law and continued representing a husband and wife, the Crummits, for ten months in violation of MLRPC 5.5(a) and (b). *Id.* at 150, 153, 157. Not only did he fail to communicate to the Crummits that he was suspended, but once they learned of the suspension, he made misrepresentations to them about the extent to which he was barred from providing legal services. *Id.* at 150. In pursuing their representation, he failed to prosecute their personal injury matter adequately, causing the case to be dismissed. *Id.* at 148. Moreover, he made misrepresentations to Bar Counsel three times in violation of MLRPC 8.1(a): he "'knowingly and intentionally' attempted to deceive Bar Counsel" by submitting to Bar Counsel an affidavit asserting that he notified the Crummits of his suspension; testified falsely that he only "assisted" Mrs. Crummit in drafting pleadings and discovery materials; and lied to Bar Counsel under oath

73

that the Crummits authorized him to sign and submit documents in multiple instances on their behalf. *Id*. at 152–53.

We determined that Hecht's conduct was "clearly dishonest and deceitful," "reflect[ing] adversely on his honesty and trustworthiness as an attorney," in violation of MLRPC 8.4(a), (b), and (c). *Id*. at 154. Moreover, his "multiple misrepresentations both to his client and to Bar Counsel" were prejudicial to the administration of justice and violative of MLRPC 8.4(d). *Id*. Notwithstanding Bar Counsel's recommendation for disbarment, and our recognition that misconduct that, like Mr. Lang's, involves "'fraud, dishonesty, or deceit' usually results in disbarment," we indefinitely suspended Mr. Hecht. *Id*. at 158. While recognizing the presence of several aggravating factors, our finding of the presence of "sufficient mitigation" militated against disbarment: he turned away prospective clients; attempted to inform his other clients that he was suspended; and he sought alternative counsel for the Crummits. *Id*.

The absence of mitigation may still mandate indefinite suspension as the appropriate sanction for an attorney with multiple MLRPC violations, including those of Rule 5.5, 8.1, and 8.4. In conduct strikingly similar to that of Mr. Lang, the attorney in *Attorney Grievance Commission v. Barton*, 442 Md. 91 (2015), failed to appear at a hearing, which resulted in the dismissal of her client's case; failed to return unearned fees on behalf of three clients; failed to file papers to correct a client's deficiency notice; made misrepresentations to the Bankruptcy Court; and failed to supervise a non-lawyer, resulting in the non-lawyer's unauthorized practice of law. *Id*. As such, we concluded that Ms. Barton violated MLRPC 1.1, 1.3, 1.4(a), 1.4(b), 1.5(a), 1.15(a), 1.15(b), 1.16(d), 5.3(a),

5.3(b), 5.3(c), 5.4(b), 5.5(a), 8.4(a), and 8.4(c). *Id*. at 144. Notwithstanding multiple violations and the absence of any mitigating factors, we held that an indefinite suspension was warranted for Ms. Barton. *Id*. at 150.

We also indefinitely suspended the respondent in *Attorney Grievance Commission v. Lee*, 393 Md. 546 (2006), who, in violation of MLRPC 1.3, 1.4, and 8.1(b), and 8.4(d), failed to return unearned fees, respond to Bar Counsel's inquiries, and diligently pursue his client's legal matter. The attorney there also had two prior sanctions for violations of the MLRPC: a public reprimand for violations of MLRPC 1.3 and 1.4; and an indefinite suspension for violations of MLRPC 1.3, 1.4(a), 8.1(a), and 8.4(c). *Id*. at 566. Despite the attorney's prior sanction history and the absence of "any significant mitigating factors," we indefinitely suspended the attorney because his conduct was "not so egregious that only disbarment can adequately protect the public." *Id*. at 565. In *Attorney Grievance Commission v. Landeo*, 446 Md. 294 (2016), Landeo violated MLRPC 1.1, 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), 1.5(a), 1.15(a), 1.15(c), 1.16(d), and 8.4(d), but we indefinitely suspended her despite the presence of few mitigating factors and several aggravating factors because, "although certainly egregious and displaying a gross lack of competence, and a pattern of a lack of diligence and adequate communication, Landeo's misconduct does not rise to a level warranting disbarment."

Although we disagree on the appropriate sanction, we agree with Bar Counsel that Mr. Lang's misconduct is egregious. As we indefinitely suspend Mr. Lang with the option for reinstatement, we are by no means understating the severity of his misconduct. Rather, in looking back to our jurisprudence concerning like circumstances, we do not conclude

that the public would be more protected with a sanction of disbarment. *See, e.g.*, *Moore*, 451 Md. 55; *Landeo*, 446 Md. 294. Indeed, we have indefinitely suspended attorneys for greater misconduct, *Hecht*, 459 Md. 133, and with fewer mitigating circumstances, *Barton*, 442 Md. 91; *Lee*, 393 Md. 546. We therefore indefinitely suspend Mr. Lang. While we can make no prediction as to when, if ever, Mr. Lang will be reinstated, a condition of any such reinstatement will be that Mr. Lang attend courses concerning his attorney trust account obligations.

*Mr. Falusi*

Mr. Falusi suggests that a public reprimand is the proper sanction, while Bar Counsel advocates for disbarment. Bar Counsel argues that we have previously disbarred attorneys who, among other things, concealed their practice of law during the pendency of their applications to the Bar. This case consists mainly Bar admissions matters and the unauthorized practice of law. The two are necessarily connected: Mr. Falusi's unauthorized practice of law was precisely what he failed to disclose. On the one hand, Mr. Falusi's unauthorized practice of law is not so egregious as Bar Counsel alleged and as the hearing judge found. On the other, his intent to conceal his practice cannot be ignored.

With those two violations at the core of this case, disbarment would seem the obvious sanction. "In unauthorized practice of law cases, 'we primarily consider [] factors of deterrence, whether the respondent's conduct was willful and deliberate, and whether the respondent cooperated with Bar Counsel's investigation.'" *Attorney Grievance Comm'n v. Shephard*, 444 Md. 299, 339 (2015) (quoting *Attorney Grievance Comm'n v.*

76

*Shryock*, 408 Md. 105, 126 (2009)). Bar Counsel directs us to *Attorney Grievance Commission v. Alsafty*, 379 Md. 1 (2003), in support of disbarment. There, we reviewed our prior decisions in which the unauthorized practice of law was a core violation. We noted that in a prior case, *Attorney Grievance Commission v. Barneys*, "a divided Court discerned a trend in this Court favoring disbarment." *Id.* at 18 (citing *Attorney Grievance Comm'n v. Barneys*, 370 Md. 566 (2002)). The respondent attorney in *Alsafty* committed unauthorized practice of law by, among other things, representing multiple clients in civil cases and filing twenty pleadings in divorce cases in Maryland courts. *Id.* at 7–8. He also had business cards that failed to include his jurisdictional limitations, and he failed to inform his clients of those limitations. *Id.* at 6–7. Disbarment was the appropriate sanction. *Id.* at 20.

In disbarring the respondent attorney in *Shephard*, we considered the nature and severity of her misconduct:

> Respondent did not appear in state court on behalf of any client, nor has Respondent been found to have violated MLRPC 8.4(b) or (c). In addition, though the facts of this case demonstrate neither a failure to cooperate with Bar Counsel nor wilful and deliberate dishonest or deceitful behavior, it is clear that Respondent wilfully and deliberately assumed responsibilities as a "Managing Attorney" in a law firm in Maryland, met with clients in Maryland, and undertook the representation of those clients in Maryland. In doing so, she misled clients and the general public by failing to disclose the fact that she was not licensed to practice law in Maryland. Further, during Respondent's tenure as "Managing Attorney," several clients paid fees to [Respondent's law firm] and did not receive the services that they were promised.

*Id.* at 341. Conversely, in *Attorney Grievance Commission v. Ambe*, we characterized the respondent attorney's situation as follows:

> The situation in the case sub judice appears to be that of an inexperienced attorney who became licensed in 2009 (in New York), and without any prior experience with lawyering in any jurisdiction, wanted to open a practice dedicated solely to the practice of immigration law. He got in trouble when he attempted to assist immigration clients in areas of the law he was not permitted to practice in this state. There is absolutely no evidence that he was attempting to solicit clients for representation in matters of Maryland law.

425 Md. 98, 140 (2012). *Ambe* is not unlike the present case, but it varies in one significant respect: Ambe did not conceal his law practice from the State Board and misrepresent it to Bar Counsel. Without that fact, Mr. Falusi's conduct was less serious. But because of his dishonesty, Mr. Falusi is more like the respondent in *Shephard*, in that he has violated both 5.5 and 8.1.

We also find similarities between Mr. Falusi and the respondent attorney in *Hecht*. As discussed above, Hecht, who was already suspended, engaged in the unauthorized practice of law and made misrepresentations to Bar Counsel. Though there were different aggravating and mitigating factors present in that case, Mr. Falusi's inexperience, absence of prior discipline, and relatively minor violation of 5.5 warrants a sanction less than disbarment. An indefinite suspension is the proper sanction for Mr. Falusi's transgressions.

**IT IS SO ORDERED; RESPONDENTS SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST OLAYMI ISAAC FALUSI AND STEVEN ANTHONY LANG.**

Circuit Court for Prince George's County
Case No. CAE17-07945

Argued: April 9, 2018

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 86

September Term, 2016
_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

STEVEN ANTHONY LANG AND OLAYEMI
ISAAC FALUSI
_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.
_____

Concurring and Dissenting Opinion by Watts, J.
_____

Filed: August 16, 2018

Respectfully, I concur in part and dissent in part. I concur with the Majority's conclusion that Respondents engaged in voluminous instances of misconduct, including acts that involved dishonesty, the unauthorized practice of law, and, in Falusi's case, criminal activity. The Majority also rightly determines that Respondents' misconduct is aggravated by many factors, including a refusal to acknowledge the wrongful nature of their misconduct. I part company, however, with the Majority's reasoning that indefinite suspensions are the appropriate sanctions. In my view, imposing indefinite suspensions here is completely unwarranted and inconsistent with the Court's precedent. I would hold that disbarment is the appropriate sanction for Respondents' various serious instances of misconduct.

I agree with the Majority that Lang violated MLRPC 1.1 (Competence), 1.2(a) (Allocation of Authority Between Client and Lawyer), 1.3 (Diligence), 1.4(a) (Communication), 1.4(b) (same), 1.5(a) (Fees), 1.15(a) (Safekeeping Property), 1.16(d) (Terminating Representation), 5.5(a) (Unauthorized Practice of Law), 7.1 (Communications Concerning a Lawyer's Services), 7.5 (Firm Names and Letterheads), 8.1(a) (Disciplinary Matters), 8.1(b) (same), 8.4(a) (Violating the MLRPC), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), and 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice), and Maryland Rules 16-603 (Duty to Maintain Account), 16-604 (Trust Account Required Deposits), and 16-601.1 (Attorney Trust Account Recordkeeping). And, I agree that Falusi violated MLRPC 1.1, 1.2(a), 1.3, 1.4(a), 1.4(b), 1.5(a), 1.16(d), 5.5(b)(2), 7.1, 7.5, 8.1(a), 8.1(b), 8.4(a), 8.4(b) (Criminal Act), 8.4(c), 8.4(d) and Md. Code Ann., Bus. & Occ. Prof. § 10-601 (Bar Admission Required to

Practice Law in State).  See Maj. Slip Op. at 28-66.[1]

Of these many violations of the MLRPC and other laws, Respondents' violations of MLRPC 5.5, 8.1(a), and 8.4(c) are among the most serious and constitute intentional dishonest conduct.  Indeed, the Majority concludes that Lang and Falusi engaged in the following misconduct in violation of MLRPC 5.5, 8.1(a), and 8.4(c).  Falusi violated MLRPC 5.5(a) and (b) in representing Daramola by, among other things, calling Jablon on Daramola's behalf to negotiate a payment plan for the amount she owed to Deeds Realty, drafting a payment plan agreement, holding himself out as Daramola's lawyer in correspondence with Jablon, and failing to explain his jurisdictional limits to Daramola or Jablon.  See Maj. Slip Op. at 28.  Falusi violated MLRPC 5.5(b) in the Ikpim matter by signing and filing an Information Report, being identified in the trial court as an attorney of record—a misidentification he failed to correct—and generally holding himself out as Ikpim's lawyer.  See Maj. Slip Op. at 29-30.  And, Falusi violated MLRPC 5.5(b)(2) in the Daramola, Ikpim, and Bean matters by, "[i]n addition to the misleading letterhead and website, [] fail[ing] to disclose his jurisdictional limitations to the court, his clients, and the public at large."  Maj. Slip Op. at 38.  Falusi violated MLRPC 8.1(a) by making statements to the Board of Law Examiners with an intent to deceive as to his practice of law, specifically, failing to disclose his practice of law with the Firm, and by failing to disclose this attorney discipline proceeding to the Character Committee.  See Maj. Slip Op. at 59, 61, 63.  Falusi also violated MLRPC 8.1(a) by knowingly making a false statement to Bar

---

[1]I also agree with the Majority's resolutions of Respondents' exceptions to the hearing judge's findings of fact.  See Maj. Slip Op. at 21-26.

Counsel that he had no relationship with Bean, when, in actuality, Falusi engaged in e-mail communications with Bean explaining court procedures and case strategy, indicated that he was drafting a legal document for Bean that he would file with the trial court, and sent a letter of representation to opposing counsel advising that Bean had retained the Firm and stating Bean's position in the case. See Maj. Slip Op. at 61-62. The Majority concludes that "Falusi violated MLRPC 8.4(c) by repeatedly representing himself as a Maryland attorney; failing to disclose a pending disciplinary action against him; submitting an 'inaccurate' resume to the Board; and making false statements to Bar Counsel." Maj. Slip Op. at 66.

As to Lang, the Majority concludes that Lang violated MLRPC 5.5(a) by permitting and assisting Falusi in the unauthorized practice of law. See Maj. Slip Op. at 38-39. Indeed, the Majority agrees with the hearing judge's conclusion that, "[f]rom the Firm's 'ambiguous letterhead and misleading website to the disingenuous pleadings,' [] Lang was 'complicit' in [] Falusi's efforts to hold himself out as a Maryland-licensed attorney." Maj. Slip Op. at 38. Lang violated MLRPC 8.1(a) by knowingly falsely advising Bar Counsel that he held no client funds when, in actuality, the Firm held several client checks, including a check in the amount of $3,500 from Bean, and that he had staff, when, in actuality, the Firm hired no staff. See Maj. Slip Op. at 58. Moreover, Lang's misrepresentations were made to "'minimize his culpability.'" Maj. Slip Op. at 58. Lang violated MLRPC 8.4(c) by making material misrepresentations to Bar Counsel during the investigation in this attorney discipline proceeding and by backdating a motion to comply with the Maryland Rules of Civil Procedure to withdraw his appearance in Bean's case. See Maj. Slip Op. at

- 3 -

65.

In short, among other serious misconduct, Lang knowingly made false statements to Bar Counsel and backdated a motion. See Maj. Slip Op. at 65. Falusi knowingly made false statements to Bar Counsel, repeatedly falsely identified himself as a Maryland lawyer, failed to disclose a pending attorney discipline proceeding against him, and submitted an inaccurate résumé to the State Board of Law Examiners. See id. at 66. Additionally, Falusi committed a crime by engaging in the unauthorized practice of law, thus violating MLRPC 8.4(b), see id., and Lang helped him to do so, see id. at 38-39.

In addition to conduct involving dishonesty, there are numerous aggravating factors. Lang's misconduct is aggravated by a pattern of misconduct, multiple violations of the MLRPC, a refusal to acknowledge wrongful nature of his misconduct, a dishonest or selfish motive, bad faith obstruction of this attorney discipline proceeding, indifference to making restitution, and likelihood of repetition of the misconduct. See id. at 67-68. Falusi's misconduct is aggravated by multiple violations of the MLRPC and a refusal to acknowledge his misconduct's wrongful nature. See id. at 68-69. Meanwhile, Respondents' misconduct is mitigated only by the absence of prior attorney discipline and inexperience in the practice of law. See id. at 70-72.

In innumerable cases, we have applied the principle that, "[a]bsent compelling extenuating circumstances, disbarment is ordinarily the sanction for intentional dishonest conduct." Attorney Grievance Comm'n v. Slate, 457 Md. 610, 650, 180 A.3d 134, 158 (2018) (cleaned up). Of course, "[a]lthough intentional dishonest conduct ordinarily results in disbarment, this Court considers the circumstances of each attorney discipline

proceeding to determine the appropriate sanction." <u>Attorney Grievance Comm'n v. Walter Lloyd Blair</u>, ___ Md. ___, ___ A.3d ___, No. 83, Sept. Term, 2009, 2018 WL 3414216, at *12 (Md. July 13, 2018) (citations omitted).

From my perspective, the circumstances of this attorney discipline proceeding inescapably lead to the conclusion that the appropriate sanction is disbarment. Among several other instances of misconduct, Falusi committed a crime by engaging in the unauthorized practice of law; Lang helped him do so; and both Respondents engaged in dishonesty in multiple ways, including knowingly making false statements to Bar Counsel, and, in Falusi's case, representing himself to the court and clients to be a Maryland lawyer, failing to disclose this attorney discipline proceeding to the Character Committee, and submitting an inaccurate résumé to the Board. Additionally, both Respondents have refused to acknowledge their wrongdoing, and the likelihood of repetition of the misconduct is one of Lang's aggravating factors. Disbarment is necessary to protect the public, and to deter Respondents and other lawyers from practicing law without authorization, helping others do so, lying to Bar Counsel, making misrepresentations to the Board, and withholding information from the Character Committee.

In reasoning that indefinite suspensions are the appropriate sanctions, the Majority relies on <u>Attorney Grievance Comm'n v. Hecht</u>, 459 Md. 133, 184 A.3d 429 (2018). <u>See</u> Maj. Slip Op. at 73-74, 76, 78. In <u>Hecht</u>, 459 Md. at 158, 184 A.3d at 444, this Court indefinitely suspended from the practice of law in Maryland, with the right to petition for reinstatement after twelve months, a lawyer who engaged in the unauthorized practice of law and violated multiple MLRPC, including MLRPC 8.4(b) and 8.4(c). The lawyer's

misconduct was aggravated by prior attorney discipline, a pattern of misconduct, multiple violations of the MLRPC, and significant experience in the practice of law. See id. at 157, 184 A.3d at 443. Critically, there were "several mitigating factors"; specifically,

> [the lawyer had] repeatedly admitted that he made mistakes in the way he handled [his client]s' case. As the hearing judge noted, [the lawyer had] "expressed remorse for the mistakes [that] he made in this matter[,] and did not profit from [his clients'] case," instead paying [his clients] $30,000 of his own money as restitution. Finally, the hearing judge found that [the lawyer] "made numerous unsuccessful efforts to get new counsel to represent [his clients,] and had a reputation as a competent and truthful practitioner."

Id. at 158, 184 A.3d at 443-44.

The circumstances of this attorney discipline proceeding sharply contrast with those of Hecht. While Hecht involved several mitigating factors, this case involves only two— the absence of prior discipline and inexperience in the practice of law. While the lawyer in Hecht expressed remorse and admitted that he had made mistakes, both Respondents have refused to acknowledge the wrongful nature of their misconduct. While the lawyer in Hecht had a reputation for competence and truthfulness, the hearing judge did not find that either Respondent has such a reputation. And, while the lawyer in Hecht took steps to protect his clients—including paying them tens of thousands of dollars in restitution and attempting to secure new counsel for them—there is no indication that either Respondent took any such steps. To the contrary, Lang has shown an indifference to making restitution. Given the material differences between this case and Hecht, I disagree with the Majority's statement that Hecht involved misconduct that was "greater" than Lang's. Maj. Slip Op. at 76. Additionally, it is an understatement to simply say, as the Majority does, that the mitigating factors in Hecht were "different" from those that apply to Falusi. Id. at 78.

In its analysis of the appropriate sanction for Lang's misconduct, in addition to relying on Hecht, the Majority mentions other cases in which this Court imposed indefinite suspensions—namely, Attorney Grievance Comm'n v. Moore, 451 Md. 55, 152 A.3d 639 (2017), Attorney Grievance Comm'n v. Lee, 393 Md. 546, 903 A.2d 895 (2006), Attorney Grievance Comm'n v. Landeo, 446 Md. 294, 132 A.3d 196 (2016), and Attorney Grievance Comm'n v. Barton, 442 Md. 91, 110 A.3d 668 (2015). See Maj. Slip Op. at 74-76. I would find Moore, Lee, and Landeo inapplicable, as they did not involve violations of MLRPC 8.1(a) and 8.4(c). Similarly, Barton involved a violation of MLRPC 8.4(c), but not a violation of MLRPC 8.1(a). See Maj. Slip Op. at 74-75. In my view, given that Lang knowingly made a false statement of material fact to Bar Counsel, backdated a motion, helped Falusi commit a crime by engaging in the unauthorized practice of law, committed several other violations of the MLRPC, and garnered several serious aggravating factors, the cases that the Majority relies on are distinguishable, and disbarment is warranted.

At one point, the Majority observes that Falusi's misconduct "consists mainly [of] Bar admissions matters and the unauthorized practice of law[,]" and then states: "With those two violations at the core of this case, disbarment would seem the obvious sanction." Maj. Slip Op. at 76. I could not agree more. Additionally, the Majority notes that, like the disbarred lawyer in Attorney Grievance Comm'n v. Shephard, 444 Md. 299, 119 A.3d 765 (2015), Falusi violated MLRPC 5.5 and 8.1. See Maj. Slip Op. at 78. Then, however, the Majority determines that an indefinite suspension is warranted, referring to "similarities between" Falusi's misconduct and that of the lawyer in Hecht. Id. As discussed above, Hecht is materially distinguishable, and does not provide a valid basis in this case for a

sanction that is less than disbarment.

In sum, the imposition of indefinite suspensions as the sanctions for Respondents' misconduct is not in accord with this Court's case law. The Majority states, with respect to Lang's sanction, that "we do not conclude that the public would be more protected with a sanction of disbarment." Id. at 75-76. I would conclude, however, with respect to Lang and Falusi that disbarment would be the most effective way to impress upon Respondents, and all other lawyers, the importance of not lying to Bar Counsel, not backdating motions, not engaging in the unauthorized practice of law, and not helping others to do so, not making misrepresentations to the Board, and not withholding information from the Character Committee. In my view, this Court should not establish the precedent that an indefinite suspension is the equivalent of disbarment in terms of protecting the public, and I would not take such a position in this case.

For the above reasons, respectfully, I concur in part and dissent in part.